Economy Savings & Loan Co., Appellee, *v.* Hollington, Appellee; Beaverson, Appellant, et al.*

---

*Motion to certify the record overruled, November 13, 1957.

244

(No. 342—Decided June 24, 1957.)

*Mr. Karl Weaner,* for appellee Economy Savings & Loan Company.

*Messrs. Gebhard & Hogue,* for appellant.

*Messrs. Newcomer & Shaffer,* for appellee Wesley Ellis, receiver.

DEEDS, J.  This is an appeal on questions of law and fact from a finding and decree of the Court of Common Pleas of Williams County.  The action was commenced by the defendant Rosella M. Beaverson, appellant herein, by filing a cross-petition in the receivership action, entitled Economy Savings & Loan Company v. Richard P. Hollington, in which cross-petition defendant Beaverson prayed for the termination of a certain land contract and the possession of a farm property which the defendant Hollington had contracted to purchase.  The appeal has been submitted on a stipulation of facts, the original pleadings, a transcript of the entries and proceedings in the Court of Common Pleas, and the oral arguments and briefs of counsel for the parties.

The land contract was signed and executed by the defendant Beaverson, her husband, Virgil Beaverson, and the defendant Hollington on October 21, 1954, whereby the defendant Beaverson and her husband agreed to sell to the defendant Hollington a certain farm for the agreed purchase price of $20,000 and the defendant Hollington agreed to pay the said sum in installments of $200 or more each month, commencing November 1, 1954, with interest at the rate of 4% payable semiannually, until the entire balance of the purchase price was paid in full.

It was agreed further that the farm premises was leased on a cash rental basis and that the seller should receive all rents up to November 1, 1954, and that the purchaser, Richard P. Hollington, was entitled to all rentals payable thereafter. The defendant Hollington was to pay the taxes for the year 1954 and thereafter.

It was agreed that when the purchase price was paid in full with interest, taxes and assessments, at the time and in the manner stipulated in the contract, the appellant as seller would convey to the buyer by good and sufficient warranty deed the farm premises described, same to be clear and free of all encumbrances.

The husband agreed, in consideration of the payments to be made and the sum of one dollar, to unite in the deed and release all of his right and expectancy of dower in the premises.

The provisions of the contract pertinent in a determination of this appeal are as follows:

"It is expressly agreed by and between the parties to this agreement, that if any one of said installments, or the interest accrued thereon, shall not be paid when due, then all of said installments remaining unpaid shall at once become due and payable, at the option of the first party.

"* * *

"In case default shall be made by the party of the second part, his heirs, executors, administrators or assigns, in any of the conditions above stipulated to be performed by him, it shall and will be lawful for the party of the first part, if they so elect, to treat this contract as thenceforth void, and to re-enter upon said premises at any time after such default, without serving on the party of the second part, or any person holding under him a notice to quit said land; and in case this contract shall be so treated as thenceforth void, the party of the second part, or those claiming under him, shall thenceforth be deemed a mere tenant at will under said party of the first part, and be liable to be proceeded against without notice to quit, under the provisions of the law regulating proceedings in case of forcible detainer; and the party of the first part, in such case, shall be at liberty to sell the land and premise to any person whatsoever, without being liable in law or in equity to the party of the sec-

ond part or any person claiming under him for any damages in consequence of such sale or to return any payments made on account of or under this contract, and the payments that shall have been made may be retained by the party of the first part as stipulated damages for the nonperformance of this contract on the part of the party of the second part."

The defendant Beaverson filed her cross-petition by leave of court on April 17, 1956, in which she described the real estate and alleged that she was the owner of same in fee simple. Defendant Beaverson alleges further that defendant Hollington made payments in the sum of $200 on November 1, 1954, and $200 on each month thereafter, to and including December 1955; that defendant Hollington failed to make the payment of $200 due on the 1st day of January 1956, and has failed and refused to make the payments due since that date; and that, by reason of the default of the defendant Hollington in failing to make the payments as agreed, defendant Beaverson might elect to terminate said contract and retain all payments as stipulated damages.

The prayer of plaintiff's cross-petition prays:

"Wherefore, this defendant prays for an order, judgment and decree that said contract is forfeited and terminated; that possession of said premises be immediately restored to her; that said defendant, Richard P. Hollington, and Wesley Ellis, receiver herein, be forever barred from asserting any right, title and interest in said real estate; that this defendant be awarded all payments on said contract as liquidated damages, and for such other and further relief as the court shall deem just and equitable."

The answer of the receiver to the cross-petition of the defendant Beaverson is as follows:

"Now comes Wesley Ellis, receiver herein, and for his answer to the cross-petition of Rosella M. Beaverson, states that he is without knowledge as to the facts alleged therein and, therefore, denies each and every allegation thereof.

"Wherefore, this answering receiver asks that the court deny the prayer of said cross-petition and protect the interests of the creditors of Richard P. Hollington in this matter.

"Wesley Ellis, Receiver."

The record discloses that the defendant Hollington consented to the appointment of a receiver on February 23, 1956, and that Wesley Ellis was appointed as receiver of all the defendant Hollington's property on February 24, 1956.

There is some conflict in the record as to whether the defendant Hollington made any payments pursuant to the terms of the contract after the payment of $200, which it is admitted defendant made on December 1, 1955, and a credit of $50 in January 1956, as payment on a mortgage which Hollington held on appellant's automobile. The conflict is concerning the sum of $83, which the defendant Hollington claims as an additional credit in the month of January 1956.

It is undisputed that defendant Hollington was in default for a part of the payment due January 1, 1956, and also the full amount of the payments due on February 1, March 1 and April 1, 1956, respectively, prior to the filing of defendant's cross-petition herein, and that defendant Hollington and his receiver are in default for all payments which have become due since the filing of the cross-petition.

It is also undisputed that defendant Hollington has made no payments of interest since the execution of the land contract and that appellant has been required to pay the taxes due and payable on the premises, being two installments, each in the sum of $106.31, which, with interest, amounted to the sum of $219.07.

It is agreed that the premises have been rented since the date of the execution of the land contract by the parties, for a stipulated annual cash rental of $2,000, payable quarterly, and that two quarterly payments aggregating $1,000 are now held by The West Unity Banking Company pending a determination of this action.

It appears further from the statement of facts that the defendant Hollington made improvements upon the premises amounting to about the sum of $3,000.

It is also disclosed by the stipulation of facts that the farm premises involved in the action has probably increased in market value, so that it is now estimated to be worth $27,000.

The trial court determined that defendant Beaverson was not entitled to have the contract declared void, on account of

the default of Hollington, for the reason that appellant did not make the payment of taxes until after the receivership, and that Hollington's default in the payment of interest was not intentional; also, that appellant did not elect to declare the contract terminated prior to filing of her cross-petition and that she waived her right to take advantage of the default of the defendant by the acceptance of payments at irregular times and had made no demand that the purchaser should make the payments in accord with the terms of the contract.

The Court of Common Pleas determined further that the property had increased in value and that it was for the best interests of Hollington's creditors that the property be sold at auction.

The trial court therefore found that appellant was not entitled to an order forfeiting and terminating the land contract and found that there was due appellant upon said contract the sum of $19,081.87 as of February 1, 1957. Finally, the Court of Common Pleas ordered as follows:

"It is therefore, the judgment, order and decree of the court that said real estate be sold at public auction, and that the receiver be and he hereby is authorized and directed to employ Thorp Auctions and Realty, and Dale Hallock as auctioneers, which auctioneers shall be compensated for their services in the amount of three (3) percent of the gross sales price, and that the receiver shall pay the other expenses of said sale.

"It is further adjudged, ordered and decreed that the receiver shall pay from the proceeds of said sale to the said Rosella M. Beaverson, the sum of $19,081.87 together with interest thereon at the rate of four percent per annum from February 1, 1957, to the date of payment thereof."

The principles of law governing the interpretation of contracts which provide for the payment of liquidated damages for a breach of the contract are established by clear pronouncements in decisions by the Supreme Court of the state.

A clear pronouncement of these principles of law is found in the second paragraph of the syllabus in *Doan v. Rogan,* 79 Ohio St., 372, 87 N. E., 263: .

"Whether a stipulation providing for liquidated damages for the breach of a contract is to be construed as liquidated

damages or as a penalty depends upon the intention of the parties to be gathered from the entire instrument. While courts will not construe contracts in a way authorizing recovery for liquidated damages simply because the parties have used that term in the agreement, yet, where parties to a contract otherwise valid have in terms provided that the damages of the injured party by a breach on the part of the other of some particular stipulation, or for a total breach, shall be a certain sum specified as liquidated damages, and it is apparent that damages from such breach would be uncertain as to amount and difficult of proof, and the contract taken as a whole is not so manifestly unreasonable and disproportionate as to justify the conclusion that it does not truly express the intention of the parties, but is consistent with the conclusion that it was their intention that damages in the amount stated should follow such breach, courts should give effect to the will of the parties as so expressed and enforce that part of the agreement the same as any other."

In our view, the rules of law controlling a construction of the contract involved on this appeal were stated again in a later decision by the Supreme Court in the case of *Jones* v. *Stevens,* 112 Ohio St., 43, 146 N. E., 894, where it is stated in the syllabus:

"1. To determine whether a sum named in a contract is intended as a penalty or as liquidated damages, it is necessary to look to the whole instrument, its subject-matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract.

"2. Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and dispro-

portionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.''

It is our view that the Supreme Court of the state has determined that the established principle, as stated above, should govern in the interpretation of land contracts involving the sale of real property, and the principle was stated in the syllabus in *Norpac Realty Co. v. Schackne,* 107 Ohio St., 425, 140 N. E., 480:

"1. Where it is impossible for a vendor and vendee, contracting for the sale of property, to fix with any degree of certainty what damages may accrue to the seller under the contract, they may agree upon a stipulated amount as liquidated damages. The foregoing principle is subject to the following qualification: If the amount so agreed upon is extravagantly unreasonable or manifestly disproportionate to the actual damages sustained, a court of equity will not enforce the provision for liquidated damages, but will regard it as a penalty.

"2. Where the seller and purchaser under a land contract have agreed that upon failure of the latter to pay installments of the purchase price the contract should be forfeited and payments made retained by the seller as stipulated damages, and the purchaser is unable or unwilling to pay the remaining installments as agreed, the vendor is entitled, subject to the foregoing qualification, to bring an action quieting his title and rescinding the contract, without tendering back the payments made.''

Many decisions of the supreme and appellate courts of the state involving the principle of law as announced in the above cases are cited in Ohio Annotations, Restatement of the Law of Contracts, under the title, ''Liquidated Damages and Penalties,'' 240, Section 339.

In our view, a pertinent statement of the established rule is found in the concurring opinion by Judge Ross in *Avey v. Leather Products Co.,* 73 Ohio App., 245, 260, 55 N. E. (2d), 813:

''It appears from the record that the sum found to be due

as liquidated damages under the contract has a direct relation to the actual damages suffered by the government through the breach of the contract; that actual damages would be difficult to ascertain and uncertain in amount; and that the contract, as far as is shown by the record, is not manifestly unconscionable, unreasonable and disproportionate in amount, and apparently does represent the intention of the parties. Under such circumstances liquidated damages stipulated in the contracts are enforceable. *Mackenzie* v. *Stuber,* 119 Ohio St., 588, 165 N. E., 296; *Jones* v. *Stevens,* 112 Ohio St., 43, 146 N. E., 894; *Miller* v. *Blockberger,* 111 Ohio St., 798, 146 N. E., 206; *Norpac Realty Co.* v. *Schackne,* 107 Ohio St., 425, 140 N. E., 480; *Sheffield-King Milling Co.* v. *Domestic Science Baking Co.,* 95 Ohio St., 180, 115 N. E., 1014; *Doan* v. *Rogan,* 79 Ohio St., 372, 87 N. E., 263; *Knox Rock Blasting Co.* v. *Grafton Stone Co.,* 64 Ohio St., 361, 367, 60 N. E., 563.

"Some early Ohio cases are apparently in conflict with this later well-considered and more reasonable rule. See: *Berry* v. *Wisdom,* 3 Ohio St., 241; *Lange* v. *Werk,* 2 Ohio St., 519; *Nelson* v. *Ford,* 5 Ohio, 473, 474.

"The general rule throughout the country is to the same effect as the rule here found applicable. *Kunkel & Jordan* v. *Wherry,* 189 Pa., 198 (the contract in the case here under consideration was to be performed in Pennsylvania); *Dwinel* v. *Brown,* 54 Me., 468; *Leary* v. *Laflin,* 101 Mass., 334; *Guerin* v. *Stacey,* 175 Mass., 595, 56 N. E., 892; *Peabody* v. *Richard Realty Co.,* 125 N. Y. Supp., 349; *Atkyns* v. *Kinnier,* 4 Exch., 776, 783, 154 Eng. Rep. R., 1429.

"See, also: 15 American Jurisprudence, 671, Section 240 *et seq.*; 25 Corpus Juris Secundum, 650, Section 101 *et seq.*

"Such being the case it becomes unnecessary to determine whether the law of the forum or the law where the contract was entered into applies. In any event, the stipulation is enforceable."

In the case before us, the purchaser, Hollington, made no down payment, so-called, but was only required to make monthly installment payments, which payments, if the interest had been deducted, would have amounted to less than the sum which Hollington was to receive as cash rental for the farm premises.

In other words, Hollington was afforded the opportunity to purchase real property valued at the very substantial sum of $20,000 on unusually liberal terms.

He initially acquired no substantial interest in the premises by a substantial down payment and was required to pay the comparatively low rate of 4% interest.

The parties herein must have considered, as was stated by the Supreme Court in *Norpac Realty Co.* v. *Schackne, supra,* that during the life of the contract the farm premises would undoubtedly fluctuate in value.

Since the defendant Beaverson was the owner of the premises in fee simple and the purchaser Hollington had no substantial interest in the premises, it is only reasonable to expect that the owner should benefit by an increase in the market value.

There is no reason for the assumption, in effect, that Hollington should benefit by the increase in the market value of the premises. The risks during the period of years over which the contract was to extend were assumed by the owner of the premises and the parties could not reasonably have contemplated otherwise.

In our view, the improvements were no more than might reasonably be expected of a purchaser who acquired the possession of a valuable farm property and was to receive a substantial cash rental without making any substantial payment on the purchase price.

This is true, in particular, when it is considered that the contract was to extend for a number of years and that necessarily there would be a natural deterioration and depreciation in the value of the buildings if they were not kept in repair.

Furthermore, Hollington was fully aware of the terms of the contract when he made the improvements and knew that the contract could be terminated in accord with its plain terms and provisions if he defaulted.

It is indisputably clear that Hollington, the purchaser, not only defaulted but has also acknowledged insolvency by consenting to the appointment of a receiver for all of his property.

It is clear that the purchaser has become unable, through no fault of the seller, to make any further payments in accord with the terms of the contract.

We do not consider that the doctrine of waiver has any application in a determination of the cause now before the court.

It is not reasonable to infer that, by receiving some irregular payments and not demanding a termination of the contract because the purchaser failed to make the payments regularly, as provided in the contract, the vendor intended or should be expected to waive the right to terminate the contract when the purchaser has become insolvent and is now unable to make any further payments according to the terms of the contract.

Under the circumstances, as presented by the record now before us on this appeal, we are also of the opinion, and determine, that the filing of the cross-petition, pursuant to leave of the court, was an effective notice and election of intention to rescind and terminate the contract, and any prior notice would have been of no avail and could have served no purpose.

It was well known by the court, the receiver and all parties in any way concerned that the purchaser, Hollington, could not pay the balance due according to the terms of the contract, but on the contrary was wholly unable to make any further payments in any sum whatever.

Under the title, "Termination in Pursuance of Provision in Contract," 40 Ohio Jurisprudence, 1053, Section 153, it is stated in part:

"Although it is often said that equity will not lend its aid to enforce a forfeiture, and it has been said that the usual forfeiture clause in a land contract will, on the failure of the purchaser to perform at the specified time, be disregarded and set aside by a court of equity unless the failure is intentional or results in loss to the vendor which cannot be compensated by interest, the better and modern rule has been said to be that in cases otherwise cognizable in equity, forfeiture will be enforced when that is more consonant with the principles of right, justice, and morality than a refusal of enforcement, and, under such circumstances, the court may grant a decree cancelling the contract of record."

And, at page 1055, Section 155:

"Repudiation by the purchaser without any failure to perform the contract is enough to give rise to the right of the vendor to rescind. A material breach of the purchaser without repudiation is sufficient to give rise to the right of the vendor to

rescind. Where there is repudiation or material breach, rescission is imposed *in invitum* by the law at the option of the injured party, and does not rest upon assent of the parties.''

It is our view that, on the question of election to rescind and notice, the rule applicable here has been stated in 12 American Jurisprudence, 1028, Section 446:

''A formal or written notice is not necessary, but the law requires, on the part of him who would rescind, some positive act which shows such an intention. Rescission of a contract may be a matter of acts as well as of words. Where the object of a suit is to obtain a decree of rescission, no positive act manifesting an intention to rescind is necessary prior to the suit, the bringing of the suit being a sufficient manifestation of such intention. Although in most jurisdictions it seems that an action at law to recover money paid contemplates a previous rescission by act of the plaintiff, it being necessary that the plaintiff have the title to the thing sued for at the time the action is commenced, there is some authority to the effect that where one has received nothing under a contract, one may commence an action to recover money paid without any other rescission than the commencement of such action. It has also been held that the bringing by a purchaser of an action to recover money paid is sufficient evidence of an election to treat the contract as rescinded so as to warrant the vendor in so considering it and to give him the right to enter into a contract to sell the land to a third party.''

It is our opinion that the land contract involved in the case now before us on this appeal should not have been considered as a mortgage and the property ordered sold for the benefit of the purchaser's, Hollington's, creditors, as was done by the trial court.

The rule applicable in the case before us is stated in the syllabus in *Kirby* v. *Harrison*, 2 Ohio St., 326, 59 Am. Dec., 677:

''The idea that vendor and vendee stand in the mere relation of mortgagee and mortgagor—so that, in equity, the same time will be given to the vendee to perform, that is given to a mortgagor to redeem—is contrary to reason and the whole current of modern authorities.

'' 'It would be dangerous to permit parties to lie by, with

a view to see whether the contract would prove a gaining or losing bargain, and, according to the event, either abandon it, or, considering the lapse of time as nothing, to claim a specific performance.' *Alley* v. *Deschamps*, 13 Ves., 224.

''It is no objection to a decree for rescission, that the complainant did no positive act, before filing the bill, manifesting an intention to rescind, unless on the filing of the bill, or within a reasonable time thereafter, the vendee paid or tendered payment.''

The established law of the state applicable in a determination of the case now before us has been well stated in the syllabus in *Contractors & Builders Supply Co.* v. *Cresap*, 9 Ohio App., 73, 31 C. C. (N. S.), 459:

''Where a contract for the sale of real estate provides for monthly payments, and in case of default, that the seller should have the right to re-enter the premises and that all payments made should be forfeited as liquidated damages, and the purchaser makes default in payments under the contract, the seller is entitled to the possession of the premises and to have the contract delivered up and cancelled, but the court will not enter judgment for the amount in default and order a sale of the property.''

We therefore find in favor of the defendant Beaverson upon her cross-petition and against the defendant Hollington and the receiver herein. We find that defendant Beaverson had the right to rescind the land contract involved in this action in accord with the terms thereof and that said contract has been terminated and is void; that defendant Beaverson is entitled to retain the payments which have been made by the purchaser, Hollington, upon said land contract and also the improvements which have been made upon said farm premises, as stipulated damages on account of the default and breach of said contract by the said Hollington.

We determine further that the title and possession of defendant Beaverson to the farm premises described in the cross-petition be quieted as to any and all claims of the purchaser, Hollington, and all persons claiming under him, and said land contract is cancelled and held of no account. We further find that the receiver is entitled to and should receive all farm rent-

al payments paid or which became due and payable prior to April 17, 1956, and that all payments of rent due and payable on and after April 17, 1956, shall be payable to the appellant, Rosella M. Beaverson.

The costs herein to be assessed against the receiver and the cause is remanded to the Court of Common Pleas for further proceedings in accordance with this opinion.

*Judgment accordingly.*

FESS and SMITH, JJ., concur.