DIANA L. STONEBRAKER, *et al.*

*v.*

RICHARD LEE ZINN, *et al.*

(No. 15214)

Decided February 9, 1982.

*Betsy Hutchings* for appellants.

*Randy R. Goodrich* for appellees.

MILLER, CHIEF JUSTICE:

We are asked in this appeal to reexamine the nature of an installment sales contract for the purchase of land and to declare such a contract as being entitled to the same protections and restrictions afforded analogous instruments such as deeds of trust. In the alternative, we are asked to declare the forfeiture clause of the contract between the parties to be a penalty and therefore unenforceable. Finally, we are asked to hold that the trial court erred in dismissing appellant's usury claim prior to consideration by a jury.

The facts are not in substantial dispute. On October 2, 1978, Richard and Mildred Zinn (vendors) agreed to sell to Samuel and Diana Stonebraker (purchasers) a house and land located in Preston County for the sum of $25,000. The contract entered into by the parties acknowledged receipt of a $1500 down payment and established a financing arrangement whereby the vendors agreed to accept the balance of the purchase price, $23,500, in monthly installments of $189.09 at an annual interest rate of 9%. A deed of trust lien in favor of the First Federal Savings and Loan of Waynesburg, Pennsylvania, previously given by the vendors, was acknowledged. The vendors were obligated, upon payment in full by the purchasers, to convey marketable title to the property by deed. The vendors agreed to make payments on the note secured by the deed of trust.

Purchasers took possession of the property and assumed all other responsibilities normally associated with homeownership, including payment of property insurance and taxes, maintenance and repairs. The contract provided for liquidated damages in the event the purchasers abandoned the property. The amount of the liquidated damages was the amount the purchasers had paid on the purchase price at the time of abandonment.[1]

The purchasers occupied the premises from November 1978 to November 1979 and made monthly payments. In November 1979, the purchasers notified the vendors that

---

[1] The pertinent portion of the contract in regard to liquidated damages is:

"If the Purchasers fail to make any of the monthly payments above called for, when due, . . ., and said default continues for a period of sixty (60) days, or if the Purchasers shall *abandon* said property, the Vendors shall have the right, at their option, to rescind and cancel the present sale and declare this contract as null and void thereafter, and the amount of the purchase price paid by the Purchasers hereunder shall be considered and treated as rent and liquidated damages due to the Vendors for the use of the said premises during the time this contract was in effect and for failure to perform or comply with the terms of the contract, and the Vendors shall have the right to take possession of said real estate without further demand or notice." (Emphasis added)

they could not afford both the cost of the necessary repairs to the property and the monthly house payments, and that they intended to vacate the premises. Prior to December 1, 1979, the purchasers vacated the property.

This action was commenced on December 6, 1979, when the vendors filed a complaint in the Magistrate Court of Monongalia County, seeking to recover damages for property allegedly removed from the premises by the purchasers. This action was later consolidated with an action alleging that the contract was usurious and unconscionable which was filed by the purchasers in the Circuit Court of Preston County. The trial court found that the vendors were entitled to liquidated damages by way of being able to keep the money paid by the purchasers. The court also found that the purchasers were not entitled to any relief on the theories they presented to the trial court. From this judgment, the purchasers appeal.

## I.

The purchasers claim that the forfeiture clause in the contract[2] is a penalty because the damages retained by the vendors are grossly disproportional to their actual damages and, therefore, it is unenforceable. The vendors argue that the clause is a valid liquidated damage clause.[3]

Considerable recognition is given to the premise that parties entering into an agreement may avoid all future questions of damages which may result from a violation thereof by agreeing to a definite sum to be paid upon such a violation. There are several criteria by which a valid liquidated damage clause may be distinguished from a

---

[2] *See* contract provision, note 1, *supra.*

[3] The distinction between a penalty and a liquidated damage clause is significant. If the provision is considered a penalty, courts generally find the clause void and limit recovery to actual damages. *Wilson v. Dealy,* 222 Tenn. 196, 434 S.W.2d 835 (1968); *McCane–Sondock Protection Systems, Inc. v. Emmittee,* 540 S.W.2d 764 (Tex. Civ. App. 1976); *Brower Co. v. Garrison,* 2 Wash., App. 424, 468 P.2d 469 (1970). If the provision is held to be for liquidated damages, it will be enforced according to its terms. 25 C.J.S. *Damages* § 116 (1966).

penalty as evidenced by this statement from 22 Am.Jur.2d *Damages* § 214 (1965):

> "[A] stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach." (Footnote omitted)

*See also Dolbeer v. Harten,* 91 Idaho 141, 417 P.2d 407 (1966); *Melton v. Amar,* 86 Idaho 262, 385 P.2d 406 (1963); *Miller v. Remior,* 86 Idaho 121, 383 P.2d 596 (1963); *First National Bank and Trust Company of Barrington v. Maas,* 26 Ill. App.3d 733, 327 N.E.2d 205 (1975); *Economy Savings & Loan Co. v. Hollington,* 105 Ohio App. 243, 152 N.E.2d 125 (1957); *Christy v. Guild,* 101 Utah 313, 121 P.2d 401 (1942); 25 C.J.S. *Damages* § 113 (4) (1966); 5 Williston, *A Treatise on the Law of Contracts,* "Excuse of Conditions Causing Forfeiture" § 792 (1961); Calamari, J. and Perillo, J., *The Law of Contracts,* Damages § 14-31 (1977).

We have adopted basically this same rule as indicated by Syllabus Point 1, in part, of *Charleston Lumber Company v. Friedman,* 64 W. Va. 151, 61 S.E. 815 (1908), in regard to the circumstances when parties may properly contract for liquidated damages:

> "Where the damages are uncertain and not readily capable of ascertainment in amount by any known or safe rule, whether such uncertainty lies in the nature of the subject, or in the particular circumstances of the case; or (2) where from the nature of the case and tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties."

*See also Detroit Edison Company v. Wyatt Coal Company,* 1 F.2d 768 (4th Cir. 1925); *Wetzel County Savings & Loan v.*

*Stern Bros.*, 156 W. Va. 693, 195 S.E.2d 732 (1973); *Wilkes v. Bierne*, 68 W. Va. 82, 69 S.E. 366 (1910).

This Court has also held that a clause for damages in a contract is a penalty rather than a liquidated damage provision when the amount is grossly disproportional in comparison to the damages actually incurred. This is true even though the provision is denominated as liquidated damages in the contract. *Yost v. Wills*, 86 W. Va. 71, 102 S.E. 728 (1920); *Beury v. Fay*, 73 W. Va. 460, 80 S.E. 777 (1914). *See also* 25 C.J.S. *Damages* §§ 101-16 (1966).

In determining whether the amount forfeited by a purchaser through liquidated damages under an install-ment land contract is so grossly disproportional to the damages actually incurred, courts take into account not only the loss of fair rental value to the vendor, but also costs involved in the sale of the property, depreciation, attorney fees and other directly related expenses arising by virtue of the purchaser's abandonment of the property. In *Valdez v. Christensen*, 89 Idaho 285, 404 P.2d 343 (1965), there was a $90,000 contract with $25,000 paid on the purchase price which permitted the vendors to keep all payments made if the purchasers defaulted. The trial court found that the loss of rental, depreciation and other items totalled $21,450 and left a $3,550 balance against the $25,000 down payment. The trial court additionally charged against the down payment attorney's fees in the amount of $850 and ordered repayment of $2,700 by the vendors to the purchasers. On appeal, the trial court was reversed for ordering the repayment:

> "As the record now stands it does not appear that a forfeiture of $2,700 as additional damages for the breach of a contract of the magnitude of that here involved would be unconscionable or suffi-cient to amount to a penalty." *Valdez*, 404 P.2d at 346.

In *Melton v. Amar*, 86 Idaho 141, 385 P.2d 406 (1966), the court held the purchasers were not the victims of an unreasonable damage clause which provided that vendors could keep all payments made to them. The reasoning was that the amount kept bore a reasonable relation to the damages and expenses incurred, as the court stated:

"The trial court ... properly took into consideration the respondents' expenses in repossessing the property, including the respondent's attorney's fees and expenses in arriving at its determination that the forfeiture of the payments in this instance did not constitute a penalty." *Melton*, at 409.

*See also Dolbeer v. Harten, supra; Miller v. Remior, supra*; Annot., 31 A.L.R.2d 8 (1953); Annot., 6 A.L.R.2d 1401 (1949); 92 C.J.S. *Vendor & Purchaser* § 537 (1955).

In the present case, the vendors retained $3,850. The parties appear to agree that the $189.09 payment was a fair monthly rental for the property. The vendors point out that in addition to the rental payments, they incurred expenses for the original sale and conveyance of the property and expenses in selling the property a second time. They also allege that the purchasers damaged the property during their possession.[4]

Based upon our previous discussion, we do not believe that the retention by the vendors of approximately $3,850 ($1,500 down payment plus monthly payments of $189.09 for approximately twelve months) was excessive. The monthly payments of $189.09 are reasonable as a rental value for a home valued at $25,000. The total monthly payments were approximately $2,350 up the time of the default. The $1,500 representing the initial down payment does not represent an excessive retention when the various expenses the vendors incurred in conjunction with regaining the property are taken into account.

Obviously, each case will turn on its own facts since the higher the deposit and monthly rental the more the vendor retains on a default. It is also apparent that the longer the contract is in effect the greater the sum will be on default. Another factor that has a bearing, which is not present in this case, is whether the purchaser has placed permanent improvements on the premises which substantially increase its value.

---

[4] Because this case never reached trial, the payment of these expenses remains somewhat clouded. The vendors listed expenses exceeding $3,800 in their appellate brief.

## II.

Purchasers ask us to declare installment land contracts as equitable mortgages and to require all the protection and requirements accorded to mortgages and deeds of trust. *See* W. Va. Code, 38-1-1, *et seq.*, and 38-1A-1, *et seq.* There is authority elsewhere which supports this proposition, but these cases involve situations where the purchasers have performed on the land contract over a long period of time and have built a considerable equity in the property well in excess of a reasonable amount of damages incurred by the vendors. *Ward v. Union Bank and Trust Company,* 243 F.2d 476 (9th Cir. 1956); *H & L Land Company, Inc. v. Warner,* 258 So.2d 293 (Fla. App. 1972); *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973); *Sebastian v. Floyd,* 585 S.W.2d 381 (Ky. 1979); *Brannock v. Fletcher,* 271 N.C. 65, 155 S.E.2d 532 (1967); *Anderson Contracting Company v. Daugherty,* 417 A.2d 1227 (Pa. Super. 1979); 8A *Thompson on Real Property* § 4447 (1963). We decline to consider the theory in this case since we do not believe it is applicable to those particular facts.

Furthermore, purchasers did not raise this issue below and the trial court had no occasion to rule on it. It is a well established principle that this Court will not decide nonjurisdictional questions which have not been raised in the court below. *West Virginia Department of Highways v. Delta Concrete Co.,* ___ W. Va. ___, 268 S.E.2d 124 (1980); *Dixon v. American Indus. Leasing Co.,* 157 W. Va. 735, 205 S.E.2d 4 (1974); *Shaw v. Shaw,* 155 W. Va. 712, 187 S.E.2d 124 (1972).

## III.

The purchasers' final contention is that the interest rate in the contract[5] is a violation of the 8% rate set by

---

[5] The contract between the parties called for $23,500 of the purchase price to be paid in monthly installments of $189.09, at an annual interest rate of 9%.

W.Va. Code, 47-6-5(b).[6] They argue that W. Va. Code, 47-6-6, mandates a voiding of the interest and the imposition of the statutory quadruple penalty on the vendors.[7]

Considerable reliance is placed upon *Carper v. Kanawha Banking & Trust Co.*, ___ W. Va ___, 207 S.E.2d 897 (1974), where this Court extensively considered the question of usury under a conditional sales contract for a mobile home. *Carper* also discussed the time-price exception to usury in a commercial transaction for the sale of personal property concluding that ordinarily whether the exception would be deemed bona fide was a question of fact.

*Carper* touched on but did not discuss in any detail two of our earlier cases which dealt with a contract for the sale of real property where the purchaser had agreed to pay for the property by monthly installments at an interest rate that was higher than the allowed rate. *Swayne v. Riddle*, 37 W. Va. 291, 16 S.E. 512 (1892); *Reger v. O'Neal*, 33 W. Va. 159, 10 S.E. 375 (1889). In both instances,

---

[6] W. Va. Code, 47-6-5(b), provides:

"Parties may contract in writing for the payment of interest for the loan or forbearance of money at a rate not to exceed eight dollars upon one hundred dollars for a year, and proportionately for a greater or less sum, or for a longer or shorter time, including points expressed as a percentage of the loan divided by the number of years of the loan contract."

[7] W. Va. Code, 47-6-6, provides, in pertinent part:

All contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than is permitted by law shall be void as to all interest provided for in any such contract or assurance, and the borrower or debtor may, in addition, recover from the original lender or creditor or other holder not in due course an amount equal to four times all interest agreed to be paid and in any event a minimum of one hundred dollars. Every usurious contract and assurance shall be presumed to have been wilfully made by the lender or creditor, but a bona fide error, innocently made, which causes such contract or assurance to be usurious shall not constitute a violation of this section if the lender or creditor shall rectify the error within fifteen days after receiving notice thereof."

we treated the interest as part of the principal sum of the purchase price and refused to find any usury.

In Swayne we stated:

" 'To constitute usury there must be a borrowing and lending, with an intent to exact more interest than is allowed by law, or a forbearance, in consideration of such interest being paid. *Price v. Campbell,* 2 Call, 110. And if what is called 'interest,' or what is arrived at on the basis of a certain rate of interest, is really a part of the purchase-money or price of the land sold, and not a mere cover for a loan for the forbearance of money, it is not usurious, but is as much a part of the purchase price of the land as the principal sum." 37 W. Va. at 295, 16 S.E. at 513.[8]

Most courts appear to hold that where there is an installment land contract and interest is charged, the interest is simply considered as a part of the purchase price. Typical of the reasoning advanced is that found in *Mid-State Homes, Inc. v. Staines,* 161 So.2d 569, 571 (Fla. App. 1964):

"The law is well settled that usury can only attach to a loan of money, or to the forbearance of a debt, and that on a contract to secure the price or value of work and labor done, or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a percentage thereon. In

---

[8] *Carper* also cited *Crim v. Post,* 41 W. Va. 397, 23 S.E. 613 (1895), where this Court held that notes and a deed of trust taken in connection with the sale of real property were usurious. The Court seemed to acknowledge that if there had been a simple installment sale of the land under *Reger, supra,* and *Swayne, supra,* no usury would have been found. However, after the initial installment sale, a deed of trust had been utilized together with new notes and an added bonus with the notes being paid to a third party. This seemed to cause the transaction to be held usurious.

neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done and property sold; and the difference between cash and credit in such cases, ... must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal."

*E.g., Howell v. Mid-State Homes,* 13 Ariz. App. 371, 476 P.2d 892 (1970); *Universal C.I.T. Credit Corp. v. Hudgens,* 234 Ark. 668, 356 S.W.2d 658 (1962); *Buck v. Dahlgren,* 23 Cal.3d 779, 100 Cal. Rptr. 462 (1972); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 412 P.2d 586 (1966); *McNish v. Grand Island Finance Co.,* 164 Neb. 543, 83 N.W.2d 13 (1957); *Raben v. Overseas Barters, Inc.,* 286 N.Y.S.2d 404, 55 Misc.2d 613 (1967); *Federal Shopping Way, Inc. v. O.K. Insurance Agency, Inc.,* 78 Wash.2d 903, 481 P.2d 5 (1971).

The majority of these cases, after recognizing that usury can attach either to a loan of money or to the forbearance of a debt, conclude without any detailed analysis that the contract is one of sale. *Carper* recognized the loan-forbearance aspect of usury and went on to set criteria that should be considered in order to determine if the transaction was a bona fide sale and therefore not subject to usury. These criteria are (1) whether the buyer had a realistic opportunity to choose between a cash and credit price; (2) whether the financing agreement involved a third party who essentially finances the transaction for the seller for additional profits some of which may be split with the seller; (3) whether the credit terms are couched in terms of "interest or percent;" and (4) whether the contract contains charges ambiguously designated as "time-price differential," "finance charge," "add-on rate," which are indications of non-sale usurious devices.

These functional criteria are more applicable to a commercial sale of personal property but even if they are applied to the present case there still exists an absence of any of the factors condemned in *Carper* except that the

9% interest term does appear on the face of the contract. The monthly installments are set at $189.09 on the balance owed of $23,500. While no term is specified in the contract, standard amortization tables indicate that at this level of monthly payment, it would take 30 years to repay the amount due. In the first section of this opinion, we have adverted to the rules regarding the test under which a vendor may retain the property and the proceeds paid on the installment land contract. The test is essentially an equitable one to determine if the total amount retained by the vendor is grossly disproportional to the fair rental value of the property and other expenses incurred by the vendor resulting from the purchaser's default. Interest on the unpaid balance will be a factor in this equation since it increases the amount that is paid to the vendor. Consequently, the purchaser has protection in the event of a default because the total payments that he has made are analyzed to determine if the vendor has received a grossly disproportional sum.

Where, as here, the installment land contract provides for a monthly payment which covers interest set at a higher rate than allowed by law and amortization of the principal balance owed and such monthly payment is not grossly disproportional to the fair monthly rental value of the property, the interest rate will not be held usurious in the absence of other extraordinary factors.

For the foregoing reasons, the judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*