# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CALIFORNIA PACIFIC PROPERTIES, LLC**
**Plaintiff Below, Petitioner**

**v.) No. 23-ICA-179**     (Cir. Ct. of Cabell Cnty. No. 21-C-475)

**MARSHALL REAL ESTATE HOLDINGS, LLC**
**Defendant Below, Respondent**

**FILED**
**June 5, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner California Pacific Properties, LLC ("CPP") appeals from the April 5, 2023, final order of the Circuit Court of Cabell County. Respondent Marshall Real Estate Holdings ("MREH") filed a response.[1] CPP filed a reply. The issues raised on appeal relate to the circuit court's ruling that CPP was not entitled to the return of its earnest money pursuant to a liquidated damages provision of a real estate purchase contract between the parties.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is no error in the circuit court's decision, and no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure. For the reasons stated below, the circuit court's order in this case is affirmed.

On October 15, 2021, CPP and MREH entered into a contract ("the Agreement") to purchase property at 505 20th Street, Huntington, West Virginia (the "Property"), for Five Million Eight Hundred Eighty Thousand Dollars ($5,880,000.00). As set forth in the Agreement, the purchase price of the Property was to be paid in part by CPP's assumption of two of MREH's existing loans— which totaled approximately Three Million Dollars ($3,000,000.00)—and further payment of approximately $2,880,000.00 towards the remaining balance.

Sections 2.2(a) and 2.2(b) of the Agreement provided that: "[t]he Purchase Price shall be payable as follows:"

---

[1] CPP is represented by Patrick C. Timony, Esq., and J. Tyler Barton, Esq. MREH is represented by J. William St. Clair, Esq.

1

(a) By delivery by Purchaser to Escrow Agent (as defined below), within two business days of the date that the last party signs this Agreement and delivers a copy to the other party (such date is hereinafter referred to as the "Effective Date"), of an earnest money deposit of Fifty Thousand and 00/100 Dollars ($50,000.00). . . . The Earnest Money shall be non-refundable after the expiration of the Financing Contingency Period, except as otherwise specifically provided herein. . . .

(b) The Earnest Money shall be payable to and held by Campbell Woods, PLLC, 1002 Third Avenue, Huntington, WV 25719, attention Bruce Toney . . . ("Escrow Agent"), as agent for First American Title Insurance Company ("Title Company"), on behalf of both Seller and Purchaser pursuant to the Escrow Agent's escrow instructions, if any, to be signed by Seller, Purchaser and Escrow Agent ("Escrow Agreement"). Notwithstanding anything to the contrary contained in this Agreement, if Purchaser timely terminates this Agreement in accordance with any right to terminate granted to Purchaser by the terms of this Agreement, including, without limitation, Purchaser's rights under Sections 5.1, 5.2, 6.3, 10.1 and 10.2 the Earnest Money shall be immediately returned to Purchaser without further notice to or consent by Seller, and no party hereto shall have any further obligations under this Agreement except for such obligations which by their terms expressly survive the termination of this Agreement.

Pursuant to these provisions of the Agreement, CPP paid the escrow agent the $50,000.00 earnest money.

The Agreement granted CPP the right to terminate in the following specific situations and receive the return of the earnest money:

5.1 Inspection Period

(a) ...Purchaser shall have the right...to fully inspect the Property, including, but not limited to, the following: site visits, engineering related matters, environmental related matters, zoning, to obtain a property condition report, new survey or an update to Seller's existing survey, to review the Due Diligence Materials, and for any other purposes related to Purchaser's determination of the feasibility of the Property....If for any reason or no reason Purchaser is not satisfied, in Purchaser's sole discretion, with its inspections, Purchaser shall have the right, exercisable by written notice to Seller prior to the expiration of the Inspection Period to terminate this Agreement, in which event, the Earnest Money shall be immediately returned to Purchaser.

2

5.2 Financing Contingency Period…

(c) <u>Financing Contingency & Lender Consent</u>. If the Lender Consent is denied by Lender, conditioned in a manner unacceptable to Purchaser in its sole discretion or not given on or before the date...then Purchaser may terminate this Agreement...at any time on or prior to the expiration of the Financing Contingency Period, in which event the Earnest Money shall be immediately returned to Purchaser.

In the event that either of these circumstances occurred, the Agreement permitted CPP to terminate, upon written notice of termination, on or before December 31, 2021, and receive the return of the earnest money. However, if the transaction failed to close due to the purchaser's failure to perform, the seller would keep the earnest money pursuant to § 12 of the Agreement. That section also established that the seller's retention of the earnest money would be considered liquidated damages and be the seller's sole and exclusive remedy for the purchaser's default. Section 12 of the Agreement reads, in relevant part:

> If this transaction does not close due to a default on the part of Purchaser or Purchaser is otherwise in default of its obligations under this Agreement, then Seller shall have the right to receive and retain the Earnest Money and all interest earned thereon as liquidated damages and this Agreement shall terminate and be of no further force and effect and such retention shall be Seller's sole and exclusive remedy.

Also relevant to this action is § 14.6 of the Agreement, which states that "[i]n the event of a dispute between the parties hereto with respect to the interpretation or enforcement of either party's obligations contained herein, the prevailing party shall be entitled to reimbursement of its reasonable attorney's fees, costs, and expenses incurred in connection therewith."

To have sufficient funds to finance its purchase of the Property, CPP needed its sister company, California Pacific Mesa Properties, LLC ("CPMP"), to sell property located at 755 East Main Street, Mesa, Arizona (the "Arizona Property"). Although there was an ongoing transaction for the sale of the Arizona property at the time of the Agreement's formation, the sale of the Arizona property fell through, and the Arizona property went unsold. CPP claims that both MREH and the Lender had actual notice of CPP's intention to utilize the proceeds from the proposed sale of the Arizona Property to cover the difference between the purchase price of the Property and the total of MREH's existing loans that CPP would need to assume. However, the Agreement made no mention of the Arizona Property, its sale, or CPMP at all.

CPP gave written notice of its termination of the Agreement by letter dated November 23, 2021 (the "Termination Letter"). In the Termination Letter, CPP stated that it was terminating the Agreement pursuant to §§ 5.1(a) and 5.2(c). Also, in an email dated

3

that same day, CPP's sole member informed MREH that it would not have sufficient funds to move forward with the Agreement. CPP requested the return of the earnest money, claiming that it properly terminated the Agreement pursuant to §§ 5.1(a) and 5.2(c). However, the escrow agent did not return the earnest money, due to MREH's claim that CPP's termination was a default, and that pursuant to § 12 of the agreement, MREH was entitled to the earnest money.

CPP filed its Complaint against MREH in the Circuit Court of Cabell County on December 17, 2021. In its Complaint, CPP asserted two causes of action: Count I for Declaratory Judgment that it was entitled to the earnest money; and Count II for Breach of Contract. MREH filed an Answer and Counterclaim in response to CPP's Complaint on January 20, 2022. In its Counterclaim, MREH sought "damages and declaratory relief," and contended that CPP "breached [the Agreement], and ha[d] filed frivolous legal proceedings concerning its [allegedly] improper actions in cancelling the contract to recover an escrow payment that it [was] not entitled to recover." CPP filed its Reply to MREH's Counterclaim on February 10, 2022, which generally denied the allegations and asserted various affirmative defenses to the claims set forth in MREH's Counterclaim.

On February 25, 2022, CPP moved for declaratory judgment, arguing that the Agreement "clearly and unambiguously allowed CPP to terminate the Agreement, at its 'sole discretion,' on or before December 15, 2021, 'for any reason or no reason,'" and that CPP's termination of the Agreement "required the escrow agent to immediately return CPP's $50,000.00 earnest money to CPP without further notice to or consent by [MREH]." On March 25, 2022, MREH filed its Response to the Plaintiff's Motion for Declaratory Judgment and a Competing Motion for Declaratory Judgment. Therein, MREH argued that Section 5.1(a) was inapplicable because CPP "did not request nor perform any inspections of [the Property] prior to terminating [the Agreement]." MREH also argued that Section 5.2(c) was inapplicable because "there [was] no indication that the Bank denied or otherwise attempted to modify the loans that [CPP] anticipated assuming as part of the sale of [the Property]." Finally, MREH argued that under § 14.6 of the Agreement, if it prevails in the litigation, it is entitled to the attorney's fees it had incurred.

A hearing was held before the circuit court on CPP's Motion for Declaratory Judgment on April 4, 2022. It was established at the hearing that CPP had performed no site inspections of the Property, and CPP's counsel provided no evidence that financing was denied or offered to CPP. Soon thereafter, the circuit court emailed counsel and advised that it would be ruling in MREH's favor. On July 18, 2022, CPP filed a Notice of Supplemental Evidence and Motion for Reconsideration. In its Motion for Reconsideration, CPP offered evidence to support its claim that it had properly terminated the Agreement pursuant to Section 5.2(c) based upon unacceptable financing terms. CPP claims that the parties knew that CPMP's sale of the Arizona Property would have provided the funding to enable CPP to finance its purchase of the Property. Additionally, CPP noted

4

that MREH's lender, City National Bank, had not yet provided CPP with Lender Consent for its assumption of MREH's loans.

MREH filed its Response to the Plaintiff's Motion for Reconsideration on July 18, 2022, reiterating that the status of CPP's sale of the Arizona Property "had nothing to do with [CPP's] assumption of [MREH's] loans," and that the Lender never denied consent to CPP's assumption of the loans or offered its consent subject to any conditions. CPP filed its Reply in Support of Plaintiff's Notice of Supplemental Evidence and Motion for Reconsideration on April 5, 2023, echoing its earlier arguments.

By Final Order dated April 5, 2023, the circuit court denied CPP's Motion for Declaratory Judgment, granted MREH's Motion for Declaratory Judgment, and awarded MREH attorneys' fees incurred in the amount of $5,830.00. In its Final Order, the circuit court concluded, among other things, that §§ 5.1(a) and 5.2(c) were unambiguous, that § 5.2 was "inapplicable because no evidence was presented suggesting [CPP] was denied Lender consent or received unacceptable conditional consent from the Lender"; that Section 5.1(a) was inapplicable because "[t]he phrase 'any reason or no reason' [was] contained within, and is followed by, [CPP's] inspections of the [P]roperty and documents regarding the [P]roperty"; that CPP's "termination of [the Agreement], and thereafter fail[ure] to perform under the [Agreement] [was] a default of the [A]greement entitling [MREH] to recover the escrow"; and that MREH was entitled to an award of its attorneys' fees. This appeal followed.

Here, CPP appeals only the circuit court's April 5, 2023, Final Order entering a declaratory judgment in MREH's favor. "The standard of review for entry of a declaratory judgment is the same as that for entry of summary judgment—*de novo*." *Motorists Mut. Ins. Co. v. Zukoff*, 244 W.Va. 33, 36, 851 S.E.2d 112, 115 (2020). On appeal, CPP raises two assignments of error. We will address each in turn, after briefly discussing the validity of the relevant sections of the Agreement.

The sections of the Agreement at issue here establish that the earnest money is to be considered liquidated damages upon the purchaser's default. A liquidated damages provision effectively provides in advance the damages that are to be payable in the event of breach, as long as the provision is not unreasonable. Restatement (Second) of Contracts § 356 (1981). West Virginia law has adopted this liquidated damages principle:

> Parties may properly contract for liquidated damages (1) where such damages are uncertain and not readily capable of ascertainment in amount by any known or safe rule, whether such uncertainty lies in the nature of the subject, or in the particular circumstances of the case; or (2) where from the nature of the case and tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties.

5

Syl. Pt. 1, *Stonebraker v. Zinn*, 169 W. Va. 259, 259, 286 S.E.2d 911, 912 (1982). A liquidated damages clause will not be enforced when it is in fact a penalty, such that the "amount is grossly disproportional in comparison to the damages actually incurred." *Id.* at 259, 286 S.E.2d at 912, Syl. Pt. 2. In analyzing whether a forfeited amount of a liquidated damages provision in an installment sales contract for the sale of real property was "grossly disproportional," we consider the loss of value to the seller, costs involved in the sale of the property, depreciation, attorney's fees and other directly related expenses arising out of the purchaser's breach. *Id.* at 260, 286 S.E.2d at 912, Syl. Pt. 3.

Using this analysis, we conclude that the liquidated damages provision of the Agreement is valid and enforceable. We cannot say that a forfeiture of $50,000 is "grossly disproportional" in a property sale where the property's value is approximately Five Million Dollars, one hundred times the value of the liquidated damages, and the cost to MREH for CPP's failure to purchase the property would be difficult to ascertain, as the economic damages would arguably only be certain if and when MREH finds a new buyer for the Property.

First, CPP assigns error to the circuit court's finding that CPP failed to properly terminate the Agreement in accordance with § 5.1(a) and 5.2(c) of the Agreement. CPP argues that §§ 5.1(a) and 5.2(c) were broadly and intentionally crafted to allow CPP to terminate the Agreement in its "sole discretion," "for any reason," or even for "no reason." CPP claims that its termination of the Agreement was proper under both §§ 5.2(c) and 5.1(a) because it would not have adequate funding due to the CPMP's failure to sell the Arizona Property. Regarding § 5.1(a), the inspection provision, CPP argues its right to inspect the property was to determine the Property's feasibility, and that it was unsatisfied with the anticipated feasibility of the Property due to its lack of funds. Thus, CPP claims that it properly terminated under § 5.1(a) because, in its sole discretion, the purchase of the property was unfeasible. Regarding § 5.2(c), the financing provision, CPP argues that without the funds from the Arizona Property sale, CPP would have had to either finance or personally fund the entire price of the Property. This financing situation was apparently unacceptable to CPP, and thus CPP claims it properly terminated the agreement under § 5.2(c).

We disagree. CPP's arguments focus too much on the discretionary language of §§ 5.1(a) and 5.2(c), to the exclusion of the other words in those sections that clearly establish the context of the seller's termination rights. Section 5.1(a), tellingly labeled the "inspection period," states:

> If for any reason or no reason Purchaser is not satisfied, in Purchaser's sole discretion, with its inspections, Purchaser shall have the right, exercisable by written notice to Seller prior to the expiration of the Inspection Period to

6

terminate this Agreement, in which event the Earnest Money shall be immediately returned to Purchaser….

The purchaser's right to terminate is conditioned upon their dissatisfaction *with its inspection*. For CPP's dissatisfaction with an inspection to exist, there obviously must have been an inspection. However, the record establishes that no such inspection took place. CPP's claims are similarly erroneous regarding § 5.2(c), which gives the purchaser the ability to terminate the Agreement "[i]f the Lender Consent is denied by Lender, conditioned in a manner unacceptable to Purchaser in its sole discretion or not given on or before the date…." December 31, 2021, was the aforementioned date in § 5.2(c). However, CPP has offered no evidence that it was offered, denied, or even requested financing, and CPP terminated the Agreement on November 23, 2021, five weeks before the due date. In both situations, although CPP had the right to terminate at its sole discretion, that right was predicated upon conditions that had not occurred. Thus, the arguments in CPP's first assignment of error fail.

Second, CPP argues that the circuit court erred in awarding declaratory judgment to MREH because genuine issues of material fact exist concerning whether CPP's determination of the feasibility of the Property, which formed the basis for CPP's termination of the Agreement, fits within the Agreement's definition of "inspection." CPP also argues that issues of fact exist concerning whether MREH's lender actually denied consent or conditioned CPP's financing arrangement on circumstances that were unacceptable to CPP.

Declaratory judgment is appropriate for the resolution of legal questions, such as the rights of the parties, without the delay and expense which might otherwise accompany the litigation. *Cox v. Amick*, 195 W. Va. 608, 612, 466 S.E.2d 459, 463 (1995). While a declaratory judgment's legal conclusions are reviewed under a *de novo* standard, the lower court's factual findings are reviewed under a clearly erroneous standard. *Id.*

CPP's arguments miss the mark. Whether a determination of the Property's feasibility formed the basis for its termination is immaterial to whether an inspection occurred. CPP's argument here hinges on the existence of a factual dispute in regard to whether some action taken on its part constituted an "inspection" under the Agreement. However, the record shows no evidence that any inspection occurred. Plainly put, if the mere fact that CPP had decided that it could not afford the Property constituted an "inspection," it would render most of § 5.1 meaningless. CPP is trying to recast a business judgment as a property inspection, and would have us believe that it bargained for the ability to ascertain at a later time whether it could afford to purchase the Property. That would be an unorthodox negotiation tactic and condition to be sure. There is no genuine dispute of material fact here as to whether an inspection occurred. CPP's arguments that there is a material dispute concerning whether they were denied lender consent or offered unacceptable financing suffers a similar defect. The record contains no evidence that CPP

7

was denied lender consent, or offered financing at all, so there can be no genuine dispute of material fact regarding the lender consent or financing conditions. CPP bore the burden of offering some evidence to show that the circuit court was clearly erroneous in its factual findings, but it has failed to do so. Thus, we cannot conclude that there is clear error here to preclude our affirming of the Circuit Court's declaratory judgment order.

Accordingly, we affirm the circuit court's April 5, 2023, order with respect to all assignments of error raised by CPP.

Affirmed.

**ISSUED:** June 5, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear