## CIRCUIT COURT OF THE CITY OF RICHMOND

Gordonsville Energy, L.P.

v.

Virginia Electric & Power Co.

### Case No. LA-2266-4

By Judge Randall G. Johnson

May 29, 1996

This breach of contract action is before the court on the parties' cross motions for summary judgment. While numerous issues and sub-issues are raised by the parties, the court finds that the following three major issues are presented: (1) whether a party to a contract which contains a provision for liquidated damages may, by clear and unambiguous language in the contract, waive its right to challenge the imposition of such damages even if actual damages can be readily calculated and even if the liquidated damages provided for in the contract are so out of proportion to the actual loss that, in the absence of a waiver, they would be an unenforceable penalty; (2) whether the periods of time during which the events leading up to this action occurred are "Forced Outage Days" as that term is used in the contract and, if they are, how such days should be calculated; and (3) whether the contract's "Force Majeure" provisions are invoked by the actions or inactions of what one of the parties argues are "third parties." The parties contend that there are no material issues genuinely in dispute with respect to the issues presented and that summary judgment on each issue should be granted to one party or the other. The court agrees that summary judgment is appropriate.

Gordonsville Energy, L.P., which the parties refer to as "GELP," owns and operates two electric generating facilities known as Facility 1 and Facility 2 in Louisa County, Virginia, near Gordonsville. The Facilities produce two forms of energy: thermal (low-pressure steam) and electric.

Thermal energy from the Facilities is used for the treatment of wastewater. The Facilities' electrical capacity and output are used exclusively by Virginia Electric and Power Company ("Virginia Power"), a publicly regulated Virginia corporation which sells electric power to industrial, business, and residential customers in Virginia. Virginia Power obtains the electric power which it sells from its own power-generating facilities and from independent providers such as GELP. In a series of agreements, amendments to agreements, and restatements of agreements beginning in 1989, all of which will be collectively referred to in this opinion as one contract, GELP and Virginia Power set out their agreement covering GELP's production and supply and Virginia Power's purchase of GELP's electrical capacity and output at the Gordonsville Facilities. The present dispute concerns the interpretation and application of several of the provisions of that contract as they relate to two power outages at the Facilities.

Under the terms of the contract, GELP is required to provide electricity to Virginia Power, whenever Virginia Power demands it, through what is called a "dispatch;" that is, when Virginia Power "dispatches" Facility 1, Facility 1 must provide the specified amount of electricity until the dispatch is ended. Virginia Power pays GELP for actual electrical output, called "Net Electrical Output," and for GELP's readiness to provide such output, called "Dependable Capacity," in accordance with formulas set out in the contract.[1] Also set out in the contract are several other definitions which are at the heart of the parties' summary judgment motions. The first such definition is of the term "Forced Outage." A "Forced Outage" is defined as:

> An occurrence where: (i) any or all of the Facility's Dependable Capacity is not available for Dispatch; or (ii) the Facility's delivery of Net Electrical Output deviates from Virginia Power's Dispatch level by greater than ±5%.

Contract § 1.18.

---

[1] The court rejects GELP's argument that Dependable Capacity is only electrical power actually delivered to Virginia Power. Indeed, if GELP is correct, then there is no difference between Dependable Capacity and Net Electrical Output. A fair reading of the contract, the second amendment and restatement of which is 99 pages long, makes it clear that the two terms refer to different obligations under the contract, and that GELP's readiness to provide electrical power can be as important to Virginia Power as its actual delivery of it.

A "Forced Outage Day" is:

> A continuous twenty-four (24) hour period (a) beginning with the start of a Forced Outage, regardless of the number of actual outages that may occur during such twenty-four (24) hour period(s), and (b) designated by the Operator as a Forced Outage Day.

Contract § 1.20.

Under the contract, GELP is allowed a certain number of Forced Outage Days each year without penalty. The precise number of Forced Outage Days for each year may vary and is determined by formulas and circumstances not germane to this opinion. Beyond that number, the contract provides:

> The Parties agree that Virginia Power will be substantially damaged in amounts that will be difficult or impossible to determine if . . . the Facility exceeds the allowance for Forced Outage Days under Section 10.15(g) . . . . Therefore, to the limited extent set forth in the Agreement, the Parties have agreed on sums which the Parties agree are reasonable as liquidated damages for such occurrences. It is further understood and agreed that the payment of the liquidated damages is in lieu of actual damages for such occurrences. *Operator hereby waives any defense as to the validity of any liquidated damages stated in this Agreement as they may appear on the grounds that such liquidated damages are void as penalties or are not reasonably related to actual damages.*

Contract § 10.18 (emphasis added).

Section 10.15(g) of the contract provides, in pertinent part:

> Payments [from Virginia Power to GELP] for Dependable Capacity will be reduced by six hundred thousand dollars ($600,000) as liquidated damages for each . . . Forced Outage Day that was not a Force Majeure Day and was in excess of the allowances specified in this Section 10.15(g) . . . .[2]

On June 30, 1994, a lightning bolt struck in the vicinity of GELP's Facilities. The lightning caused damage to the electrical control systems of

---

[2] The term "Force Majeure Day" will be discussed later.

the Facilities so as to render both Facilities inoperable. Facility 1 was out of service until July 7. Facility 2 was out of service until July 9. Neither Facility 1 nor Facility 2 was dispatched at the time of the lightning strike, although Facility 1 was conducting tests allowed under and contemplated by the contract. Based on the two sections of the contract just cited, and taking the position that the outages at both Facilities were the result of GELP's defective lightning protection system, which Virginia Power claims was inadequate due to negligent design, construction, and installation, Virginia Power withheld $6,000,000 from its Dependable Capacity payments to GELP, Virginia Power claiming that GELP had exceeded its Forced Outage Days allowance by ten days.

On February 13, 1995, Facility 2 was operating at its required dispatch level when the "negative phase sequence alarm," which from the parties' descriptions appears to function like a household circuit breaker, tripped the steam turbine of Facility 2, thereby causing an outage. GELP reset the turbine but the unit tripped again and Facility 2 was taken out of service. It remained out of service until February 16. Virginia Power, claiming that GELP had again exceeded its allowable Forced Outage Days, this time by two days, assessed liquidated damages of $1,200,000, and has withheld that sum from its payments to GELP. This action was filed by GELP to recover the $7,200,000 which Virginia Power has withheld from it.

## I. *Liquidated Damages*

The first series of issues presented for determination by the parties involves the question of liquidated damages. Chief among these issues is whether GELP, by the clear and unambiguous language of § 10.18 of the contract quoted above, has waived its right to claim, and to present evidence in support of such claim, that the liquidated damages called for by the contract are unenforceable as a penalty because Virginia Power's actual damages can be readily calculated or because the liquidated damages called for in the contract are significantly out of proportion to Virginia Power's actual loss. The court holds that GELP has not waived its right to make such a claim.

In making this ruling, the court is faced with two laudable, but in the context of this case, irreconcilable principles. First, the court believes strongly that the parties to a contract, particularly sophisticated and legally well-represented parties such as those at bar, should have the benefits, and suffer the consequences, of their bargain. It is for the parties, not the court,

to determine their agreement. As was said in *Magann Corp. v. Electrical Works*, 203 Va. 259, 123 S.E.2d 377 (1962):

> It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

203 Va. at 264. *See also Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984).

In this case, the contract plainly declares the parties' clear and unambiguous intent that GELP would pay liquidated damages to Virginia Power of $600,000 a day if GELP breached the contract in the manner alleged by Virginia Power here. Such agreements are enforceable.

> The law is settled that parties to a contract properly may agree in advance upon the amount to be paid for loss which may result from a breach of the contract. When the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss, the amount is deemed to have been intended as enforceable liquidated damages.

*Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745 (1987).

In light of the above, Virginia Power's argument that it properly imposed liquidated damages against GELP is compelling.[3]

On the other hand, the law is just as settled that contract provisions for liquidated damages will not be enforced in every case:

> [W]here the damage resulting from a breach of contract is susceptible of definite measurement (as when the breach consists of failure to pay a sum of money) or where the stipulated amount would be grossly in excess of actual damages, courts of law usually construe such a stipulation as an unenforceable penalty.

*Id.*

---

[3] It must be kept in mind that the court is not now ruling that GELP breached the contract. In ruling on the parties' motions, however, the court must assume a breach. Otherwise, no damages, liquidated *or* actual, are appropriate.

In *Crawford v. Heatwole*, 110 Va. 358, 66 S.E. 46 (1909), the Court, quoting 1 Sutherland on Damages (3d ed.), § 279, observed:

> "As a general rule, when the injury resulting from the breach of a contract is susceptible of definite measurement, as where the breach consists in the non-payment of money, the parties will not be sustained in the enforcement of stipulations for a further sum, *whether in the form of penalty or liquidated damages* . . . ."

110 Va. at 360 (emphasis added).

The dilemma facing the court in this action is that neither Virginia Power nor GELP has cited any case from Virginia or elsewhere, and the court has also been unable to locate one, which addresses the above principles in light of specific contract language as strong as the language used by the parties here. Indeed, counsel for GELP candidly and correctly conceded during oral argument that if a party can *ever* waive the general protection which courts provide against contractual penalties, GELP has waived such protection in this case. Still, the court will provide such protection to GELP, and it will do so for reasons of public policy.

In *John Jay Esthetic Salon, Inc. v. Woods*, 377 So. 2d 1363 (La. Ct. App. 1979), the court considered a provision in a contract which provided for what the contract called liquidated damages but what the court found was a penalty. The court based its decision on what it considered to be the outrageously high amount of liquidated damages provided for in the contract, a figure which the court said could not have been contemplated by the parties in good faith at the time the contract was formed. The court continued:

> [The liquidated damages figure] is so unrealistic and unreasonable that it cannot be considered a good faith pre-estimate of probable damages, but must be deemed a penalty clause, imposed by an employer with vastly superior bargaining power, as a deterrent to prevent a breach. . . . *No matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages.*

337 So. 2d at 1367 (emphasis added, citations and footnote omitted).

In *Stanford Motor Co. v. Westman*, 151 Neb. 850, 39 N.W.2d 841 (1949), the court said:

> As a general rule, the question of whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court.
>
> In such cases the court must find out whether the payment stipulated is in truth liquidated damages or a penalty. The question whether it is the one or the other is a question of law *and one quite independent of the agreement of the parties to call it the one or the other.*

39 N.W.2d at 846 (emphasis added, citations omitted).

Closer to home, West Virginia also holds that whether a stipulated sum represents enforceable liquidated damages or an unenforceable penalty cannot be decided based only on the language of the contract. In *Stonebraker v. Zinn*, 286 S.E.2d 911 (W. Va. Sup. Ct. App. 1982), the court said:

> [A] clause for damages in a contract is a penalty rather than a liquidated damage provision when the amount is grossly disproportional in comparison to the damages actually incurred. This is true even though the provision is denominated as liquidated damages in the contract.

286 S.E.2d at 914.

And in *Wheeling Clinic v. Van Pelt*, 453 S.E.2d 603 (W. Va. Sup. Ct. App. 1994), in reaffirming its holding in *Stonebraker*, the same court concluded:

> Thus, in determining whether a clause in a contract stating a sum to be paid in the event of a breach of the contract is liquidated damages or a penalty, *the important question is not the intention of the parties but rather the reasonableness in fact of the agreed sum when the contract was made.*

453 S.E.2d at 609 (emphasis added).

On the federal level, the court in *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir. 1991), citing the Restatement of Contracts, stated:

> "Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of

the anticipated or actual loss caused by the breach and the difficulties of proof of loss. *A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy.*"

940 F.2d at 17 (*quoting* Restatement (Second) of Contracts § 356(1) (1979)).

This court agrees with the cases and portion of the Restatement just cited. This court also believes that those cases and the Restatement are fully consistent with Virginia's public policy regarding liquidated damages as evidenced, although not expressly stated to be such, by the holding in *Taylor, supra.* Such policy, in the court's view, is further evidenced by Virginia's adoption of § 2-718 of the Uniform Commercial Code, the pertinent portion of which provides:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. *A term fixing unreasonably large liquidated damages is void as a penalty.*

Va. Code § 8.2-718(1) (emphasis added).

While electric power capacity and output are not "goods" under § 2-105 of the U.C.C., Va. Code § 8.2-105, the court believes that the public policy expressed in the above section is still controlling. Indeed, in *Jessen v. Jessen*, 810 P.2d 987, 991 (Wyo. 1991), the Supreme Court of Wyoming held that the same U.C.C. provision, also adopted in Wyoming, expressed that state's public policy on liquidated damages generally so as to invalidate a liquidated damages provision in a child support agreement between former spouses, also clearly not subject to the U.C.C. The same rationale applies here.

When a contract is breached, the nonbreaching party is entitled to be compensated for the loss which that party sustains as a result of the breach. The nonbreaching party should not be rewarded for the breach, and the breaching party should not be punished for it. *See, e.g., Wright v. Everett*, 197 Va. 608, 609, 90 S.E.2d 855 (1956) (punitive damages not recoverable for breach of contract absent special circumstances such as fraud). Moreover, this court agrees with the Louisiana and Wyoming courts in *John Jay Esthetic Salon, Inc. v. Woods*, and *Jessen v. Jessen*, both *supra*, that the prohibition against rewarding the nonbreaching party or punishing the breaching party is a matter of public policy; that is, that

public policy dictates that only compensation, not reward or punishment, be awarded when a contract is breached. And since public policy *is* involved, the parties cannot enforce provisions of a contract in violation of that public policy, regardless of their intent.

> It is a rule of the common law, of universal application, that where a contract is tainted with immorality, *or is against the maxims of sound public policy*, as to the consideration of the thing to be done, no alleged right founded upon it can be enforced in a court of justice.

*Yates and Ayres v. Robertson & Berkeley*, 80 Va. 475, 484 (1885) (emphasis added) (*citing Marshall v. Baltimore & O.R.R.*, 57 U.S. (16 Howard) 314 (1853), and cases cited); *see also Chattin v. Chattin*, 245 Va. 302, 310, 427 S.E.2d 347 (1993) (agreement to facilitate or promote the procurement of a divorce is contrary to public policy and void); *Hiett v. Lake Barcroft Community Assoc.*, 244 Va. 191, 196, 418 S.E.2d 894 (1992) (pre-injury release provision signed by a sporting participant is void as against public policy); *Massie v. Dudley*, 173 Va. 42, 52, 3 S.E.2d 176 (1930) (courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by statute, common law, or general policy of law).

Accordingly, GELP's ostensible waiver of its right to claim that the $600,000 per day payment withheld by Virginia Power is a penalty and not liquidated damages cannot be enforced by Virginia Power here, and the court so holds.

In making this ruling, the court wants to make it clear what it is *not* ruling. The court is not ruling that Virginia Power is not entitled to liquidated damages; only that GELP is not precluded from trying to show that the payments retained by Virginia Power are *not* liquidated damages but, rather, are an unenforceable penalty. Specifically, GELP must show, in accordance with *Taylor v. Sanders, supra*, that the actual damages contemplated at the time the agreement was made *were* certain and were *not* difficult to determine with exactness, *or* that $600,000 a day for GELP's breach *is* out of all proportion to Virginia Power's actual loss. With regard to the latter point, the "out of all proportion" point, the court rejects Virginia Power's argument that $600,000 a day must be out of all proportion to its *probable* loss at the time the parties entered into the contract, with no consideration of its *actual* loss upon GELP's breach, in order for the court to find that the payment is a penalty. While *Taylor* and other

cases do use the phrase "probable loss" as Virginia Power asserts, the more recent case of *301 Dahlgren Ltd. Partnership v. Board of Sup.*, 240 Va. 200, 396 S.E.2d 651 (1990), makes it clear that the actual loss is also relevant. In *Dahlgren*, the trial court enforced a forfeiture provision in a county ordinance. The Supreme Court reversed. Analyzing the case as one involving liquidated damages, and citing *Taylor* and *Crawford*, both *supra*, in fact, even citing the "probable loss" language of *Taylor* relied upon by Virginia Power now, the court said:

> Facially, the forfeiture provision appears to be a penalty. *Furthermore, the record is devoid of any evidence that the* Board *sustained damages* as a result of the Partnership's default in payment of the remainder of the fees. Based on the record before us, the amount fixed is grossly in excess of, and out of all proportion to, *actual* damages.

240 Va. at 203 (emphasis added).

The above language makes it clear that actual damages, both whether they were sustained and their amount, are relevant in determining whether the liquidated damages provision of the contract should be enforced. Accordingly, GELP and, if it chooses, Virginia Power may present evidence of Virginia Power's actual damages.

Another issue related to Virginia Power's ability to collect liquidated damages is the question of whether a Facility must have been dispatched (*supra*) at the time of an outage for liquidated damages to apply. Virginia Power argues that each Facility is *always* dispatched, even if the dispatch is for zero kilowatt hours of electricity, while GELP argues that a Facility is dispatched only if it is under an order from Virginia Power to produce some level of electricity above zero kilowatt hours and that Virginia Power can only collect damages if a Facility is dispatched when the outage occurs. The court rejects both arguments.

First, the contract defines "dispatch" as "the right of Virginia Power in accordance with this Agreement and Prudent Utility Practices to . . . schedule and control, directly or indirectly, manually or automatically, the generating level of the Facility in order to commence, increase, decrease, or cease the delivery of electrical energy to the Virginia Power system . . . ." Contract § 1.10. Only by a strained reading of that definition can it be said that Virginia Power ever dispatches GELP to produce zero kilowatt hours of electricity. While Virginia Power does tell GELP to cease production of electricity, that is not the same as an order to produce electricity

at a level of zero. This holding makes no practical difference, however, since the court also rejects GELP's argument that damages can occur only while a Facility is dispatched.

As noted earlier, GELP is required under the contract to provide two things: Dependable Capacity and Net Electrical Output. While an outage which occurs while a Facility is dispatched, that is, while Net Electrical Output is being produced, almost surely causes some damage to Virginia Power, it is GELP's position that no damage can occur when an outage occurs while a Facility is not dispatched. This argument, however, ignores the value to Virginia Power of having GELP *available* to produce electricity; that is, GELP's Dependable Capacity. Without GELP's Dependable Capacity, Virginia Power's options for providing electricity to its customers are reduced; that is, it must buy electricity from a different producer, perhaps at a higher price, or it must produce electricity itself, perhaps at a higher cost. In either case, Virginia Power may well suffer damages as a result of a Facility's unavailability to be dispatched as a result of an outage even though such Facility was not dispatched at the time of the outage. Accordingly, the fact that a Facility was not dispatched at the time of an outage does not preclude Virginia Power from claiming entitlement to liquidated damages here.

Finally, at least with regard to issues involving liquidated damages, the parties disagree on whether a Forced Outage Day, as that term is used in the contract, can occur in the absence of a designation by GELP that a day during which an outage occurs *is* a Forced Outage Day. This is important because Virginia Power's claim for liquidated damages is dependent upon the subject outage period being classified as Forced Outage Days. The court holds that Forced Outage Days cannot occur in the absence of GELP's designation.

The definition of Forced Outage Day, set out *supra*, specifically requires GELP to designate a day as a Forced Outage Day ("*and* (b) designated by the Operator [GELP] as a Forced Outage Day"). Contract § 1.20. Unlike liquidated damages, this definition involves no issue of public policy. It is clear and unambiguous, and the court holds that it means what it says. As was true with the court's rejection of Virginia Power's dispatch argument, however, it makes no difference.

Section 1.19 of the contract defines "Force Majeure Day" as:

A Forced Outage Day that is both (i) excused under the provisions of Article 14 and (ii) is designated as a Force Majeure Day by the Operator.

At the time of each of the outages at issue in this case, GELP notified Virginia Power that it was claiming those days as Force Majeure Days. Since a Force Majeure Day is by definition also a Forced Outage Day, and since nowhere in the contract is there any particular method for GELP's designating an outage as a Forced Outage Day, the court holds that by claiming Force Majeure Days GELP automatically designated those days as Forced Outage Days. In addition, Virginia Power's failure to excuse those days as Force Majeure Days under Article 14 of the contract did not make such days non-Forced Outage Days. It only made them, at least in Virginia Power's mind, non-Force Majeure Days. GELP's automatic designation of those days as Force Outage Days still stands. Thus, the liquidated damages provision of the contract was triggered, subject, of course, to the other holdings of this opinion.

## II. *Calculation of Forced Outage Days*

The remaining issues can be dealt with very quickly. First, the parties disagree on whether fractions of days can be Forced Outage Days. They cannot be. As pointed out earlier, § 1.20 of the contract defines Forced Outage Day as "[a] continuous twenty-four (24) hour period . . . ." Thus, anything less than 24 hours is not a Forced Outage Day. Twenty-four hours to 47.99 hours is one day. Forty-eight hours to 71.99 hours is two days, and so on. Fractions do not count.

The parties also disagree on how to calculate Force Majeure Days where part of an outage is excused and part is not; that is, if an outage is three days long, as the February, 1995 outage was, and one day of the outage was unquestionably caused by an act of God (a Force Majeure event under Article 14 of the contract), but the other two were not, is the one day of outage caused by an act of God an excused Force Majeure Day? The court holds that it is.

The definition of Force Majeure Day, set out above, clearly and unambiguously states what a Force Majeure Day is. It is a Forced Outage Day which is excused under Article 14, which includes acts of God, and which is designated by GELP as a Forced Outage Day. Nowhere in the contract is it provided that a Force Majeure Day is somehow forfeited if it immediately precedes or follows *non*-Force Majeure Days. Indeed, under Virginia Power's argument, a catastrophic event such as a flood or hurricane that takes a Facility out of service for many days and would otherwise be a Force Majeure event would not be excused as Force Majeure Days, no matter how many, if GELP was one day, or one hour, or one minute, or,

carried to its logical conclusion, one second late in getting the Facility back on line due to some non-Force Majeure reason. The contract does not say that is true, and the court holds it is not true. If a Force Majeure Day occurred, it is not forfeited by GELP's later failure because of non-Force Majeure causes to again have the affected Facility operational.

### III. *Negligence of "Third Parties"*

The final issue before the court involves GELP's argument that events excusable under the contract's Force Majeure provisions include the negligence of "third parties;" particularly, the negligent design and construction of the Facilities by persons over whom GELP claims it had, and has, no control. The court disagrees.

The Force Majeure provisions of the contract are long, taking up three full pages. In general, however, they are just like any other force majeure provisions of contracts; they excuse GELP's nonperformance if such nonperformance is due to events or circumstances beyond GELP's control. The actions or inactions attributed by GELP to third persons here were *not* beyond GELP's control.

The contract between the parties requires GELP to furnish electricity to Virginia Power. In order to do that, it was necessary for GELP to construct the Facilities in question. GELP could have either constructed those Facilities itself, or it could have contracted with someone else to construct them. It contracted with someone else, the so-called "third parties." In either case, however, responsibility for providing electricity to Virginia Power is GELP's, not the third party's:

> Except as provided in Section 8.3, *Operator shall be responsible for the design, construction, installation, maintenance and ownership of the Facility* . . . .

Contract § 8.2 (emphasis added).[4]

Thus, whatever cause of action GELP might have against the actual builders of the Facilities, its liability to Virginia Power is unaffected. Accordingly, GELP may not rely on the Facilities builders' negligence to defeat Virginia Power's claim for liquidated damages.

---

[4] Section 8.3 of the contract deals with metering facilities owned by Virginia Power. It has no bearing on the issue at bar.

## IV. *Conclusion*

In summary, the court makes the following rulings.

1. GELP is not precluded from claiming, and presenting evidence on such claim, that Virginia Power's withholding $600,000 a day from Virginia Power's payments to GELP under the contract constitutes an unenforceable penalty and not liquidated damages.

2. Virginia Power is not precluded from claiming liquidated damages for the outage which began June 30, 1994, even though the Facilities were not dispatched at the time of the outage.

3. The days of outage at issue in this lawsuit were designated as Forced Outage Days by GELP.

4. There can be no fractional Forced Outage Days.

5. If Force Majeure Days occur immediately before or immediately after Forced Outage Days that are not Force Majeure Days, the Force Majeure Days are still excused under Article 14 of the contract.

6. GELP cannot rely on the negligence of "third party" contractors in the design and/or construction of the Facilities to defeat Virginia Power's claim for liquidated damages.

### July 9, 1996

After considering counsel's arguments made last week, and upon a re-examination of the parties' contract, I have concluded that my earlier ruling concerning fractional Forced Outage Days is wrong. Specifically, I now agree with Virginia Power's argument that § 1.18 of the contract, which defines a Forced Outage Day, means that an outage, regardless of duration, is a Forced Outage Day as long as it is designated as such by GELP. Thus, contrary to the holding of my May 29 opinion letter, an outage lasting twenty-four hours or less *is* a Forced Outage Day if so designated by GELP, even if the outage lasts only a few seconds. If an outage lasts longer than twenty-four hours, or if a second outage occurs more than twenty-four hours after the beginning of the first outage, that would be a second Forced Outage Day, and so on, again as long as it is designated as such by GELP. In other words, rather than "rounding down" to calculate Forced Outage Days, we must "round up." An outage lasting twenty-four hours or less is one Forced Outage Day. An outage lasting more than twenty-four hours but not more than forty-eight hours is two Forced Outage Days. One lasting more than forty-eight hours but not more than seventy-two hours is three Forced Outage Days, and so on, provided,

of course, that they are designated as such by GELP. My earlier ruling to the contrary is erroneous.

Turning now to § 10.15(g) of the contract, that section provides that GELP shall be allowed a certain number of Forced Outage Days during "full Capacity Test Periods." The problem is that in applying the formula set out in that section, "fractional" forced outage days can result. Since, however, the contract definition of a Forced Outage Day is "a continuous twenty-four (24) hour period," and consistent with the ruling just made about "rounding up," I now hold that Forced Outage Days calculated under § 10.15(g) of the contract must also be rounded up to the next whole day. Thus, if applying § 10.15(g)'s formula results in a Forced Outage Days number of 5.3, GELP shall be allowed six Forced Outage Days. If the formula results in the number 8.01, nine Forced Outage Days are allowed, and so on. To the extent my earlier holding is inconsistent with this one, it is now vacated.