## CIRCUIT COURT OF THE CITY OF RICHMOND

Gordonsville Energy, L.P.

v.

Virginia Electric & Power Co.

November 7, 1996

Case No. LA-2266

BY JUDGE RANDALL G. JOHNSON

In this breach of contract action between Gordonsville Energy, L. P. ("GELP") and Virginia Electric and Power Company ("Virginia Power"), the court must decide whether the parties' contract provision for liquidated damages is enforceable. In a letter opinion and order dated May 29, 1996, the court held that in spite of clear and specific contract language requiring GELP to pay liquidated damages of $600,000 a day to Virginia Power upon GELP's breach of contract, and which also purportedly waives all defenses which GELP might have to the payment of such damages, including the traditional defense that such payment is not damages but an unenforceable penalty (*see, e.g., Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745 (1987)), GELP was not precluded from maintaining such a defense. Trial on the merits was set to begin on October 21, 1996, but had to be continued because of the unavailability of a key liability witness. At the parties' request, however, the court severed the issue of enforceability of liquidated damages from the issue of liability, and trial of the damages question was held on October 23. Because the damages question is one of law, no jury was empaneled.

The court's May 29 letter opinion contains a detailed statement of facts. Briefly, GELP owns and operates two electric generating facilities known as Facility 1 and Facility 2 in Louisa County, Virginia, near Gordonsville. It sells its electricity exclusively to Virginia Power, which in turn sells it to

its industrial, business, and residential customers. Under the parties' contract, GELP is required to provide electricity to Virginia Power, whenever Virginia Power demands it, through what is called a "dispatch;" that is, when Virginia Power "dispatches" Facility 1, Facility 1 must provide the specified amount of electricity until the dispatch is ended. Virginia Power pays GELP for actual electrical output, called "Net Electrical Output," and for GELP's readiness to provide such output, called "Dependable Capacity," in accordance with formulas set out in the contract. The present case involves two outages, one beginning on June 30, 1994, and one beginning on February 13, 1995, which caused the facilities to be out of service. Virginia Power, claiming that the outages constituted breaches of contract, assessed liquidated damages at the contract rate of $600,000 a day for twelve days, for a total of $7,200,000. It is these damages which GELP claims are unenforceable.

The relevant contract provision is § 10.18, which provides in pertinent part:

> The Parties agree that Virginia Power will be substantially damaged in amounts that will be difficult or impossible to determine if . . . the Facility exceeds the allowance for Forced Outage Days . . . . Therefore, to the limited extent set forth in the Agreement, the Parties have agreed on sums which the Parties agree are reasonable as liquidated damages for such occurrences. It is further understood and agreed that the payment of the liquidated damages is in lieu of actual damages for such occurrences. GELP hereby waives any defense as to the validity of any liquidated damages stated in this Agreement as they may appear on the grounds that such liquidated damages are void as penalties or are not reasonably related to actual damages.

"Allowed Forced Outage Days" are days on which GELP's facilities are out of service without constituting a breach. According to Virginia Power, the twelve days at issue here are in excess of the number of Forced Outage Days allowed. GELP disagrees. Since this question relates to the issue of liability, it cannot be decided now.

The court will not repeat the analysis contained in its May 29 letter opinion which led to the conclusion that in spite of the contract language just quoted, GELP is not precluded from claiming that the $7,200,000 assessed by Virginia Power is an unenforceable penalty. The court adheres to that analysis. One of the cases discussed in that opinion, however,

merits repeated mention here, especially since each party relies on different language from that case to support its present argument. The case is *Taylor v. Sanders*, 233 Va. 73, 353 S.E.2d 745 (1987), already cited above.

In *Taylor*, the Supreme Court makes two statements which are particularly significant in light of the facts of this case. First, the Court says:

> The law is settled that parties to a contract properly may agree in advance upon the amount to be paid for loss which may result from a breach of the contract. When the actual damages *contemplated* at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the *probable* loss, the amount is deemed to have been intended as enforceable liquidated damages.

233 Va. at 75 (emphasis added).

On the same page of its opinion, however, the Court also says:

> But where the damage resulting from a breach of contract is susceptible of definite measurement (as when the breach consists of failure to pay a sum of money) or where the stipulated amount would be grossly in excess of *actual* damages, courts of law usually construe such a stipulation as an unenforceable penalty.

*Id.* (emphasis added).

It is Virginia Power's position, based on the first quotation, that the only relevant factor is what was in the minds of the parties when they entered into the contract; that is, that no matter what the situation is with regard to actual damages, it is what the parties *contemplated* that matters. GELP relies on the second quotation to argue that no matter what the parties contemplated at the time of their bargain, liquidated damages cannot be recovered if they are grossly in excess of *actual, quantifiable* losses. The court rejects both arguments and holds that what the parties contemplated and what the nonbreaching party actually lost are *both* relevant.

Virginia Power concedes that it suffered no damages which it can put a present value on; that is, Virginia Power is unable to say that it has lost any identifiable sum of money as a result of GELP's inability to provide electricity in June and July, 1994, and in February, 1995. It did not purchase electricity elsewhere to replace the electricity expected from GELP. No customer made a claim against Virginia Power for failing to provide electricity. No costs were incurred by Virginia Power as a result of not

being supplied with electricity by GELP. In other words, Virginia Power can point to no present, quantifiable loss as a result of GELP's alleged breaches. This is strong evidence that liquidated damages are not appropriate. It is not, however, conclusive.

Virginia Power presented evidence intended to show that in spite of the absence of a presently quantifiable loss, actual damages did occur. First, and most obvious, is that GELP failed to provide Virginia Power with something it promised to provide: "Dependable Capacity." As noted earlier, GELP is required by the contract to provide two things: "Net Electrical Output," which is actual electricity produced; and "Dependable Capacity," which is the ability and availability to produce electricity at Virginia Power's request. Each of these items is paid for by Virginia Power separately. In fact, Virginia Power's payment to GELP for "Dependable Capacity" for the years in question was $15,000,000 per facility per year. Again, this is payment for capacity, not for actual production. When considered in that light, $600,000 a day in liquidated damages is not necessarily outrageous; that is, if being available and able to produce electricity — not actually producing it — is worth $15,000,000 per facility per year, $600,000 a day in liquidated damages for *not* being available and able to produce as promised is not as unreasonable as GELP suggests.

Virginia Power also presented evidence that the subject outages will have an impact on future rate determinations by the State Corporation Commission (SCC), which sets the rates which Virginia Power can charge its customers. In this regard, Coty Walker, a deputy director in the SCC's Division of Energy Regulation, testified that the performance of generating units such as GELP does have an effect on future rate cases. Specifically, a history of outages and nonavailability of facilities such as GELP may lead the SCC to set lower rates because of the negative impact on Virginia Power's total performance. In other words, since Virginia Power has not performed as well as it should, it may not receive the rates it requests. In addition, Mr. Walker testified that the SCC may determine that Virginia Power is paying too much for its supply of electricity since its payments for "Dependable Capacity" to suppliers such as GELP are based, in part, on specific quantities of availability. If some of those quantities of availability are lost, such as through the power outages at issue here, Virginia Power's costs increase. Since the SCC might consider such increased costs to be unreasonable, and since rates are directly related to reasonable costs, Virginia Power may be adversely affected at future rate

hearings. No one can say today, however, what the monetary loss to Virginia Power will be.

Similarly, Virginia Power presented evidence that outages such as the ones that occurred here also have an impact on Virginia Power's standing in the financial community, particularly the value of its stock and its ability to borrow money. John Davis, Virginia Power's vice president of finance and administrative services, testified that Virginia Power, like all companies whose stock is publicly traded, is constantly analyzed and scrutinized by financial markets. Many factors, including reliability and costs, are taken into account when stock prices and interest rates on borrowing are set. The company's "goodwill" is also affected. Again, a present value for these adverse consequences cannot be determined.

Virginia Power also presented evidence to show that future negotiations with other suppliers might be adversely affected by the outages at issue here. For example, other producers, knowing that GELP is not quite as reliable as Virginia Power would like, may demand higher prices for *their* electricity. Like each of the other factors cited by Virginia Power, this factor cannot be presently quantified. In fact, it is Virginia Power's inability to presently quantify any of these factors which lies at the heart of the parties' conflicting positions. On the one hand, GELP argues that Virginia Power's inability to say whether and in what amount each of the factors cited by Virginia Power will adversely affect Virginia Power shows that such factors are speculative and conjectural and do not constitute actual damage. On the other hand, Virginia Power argues that it is precisely because it cannot say definitively how and whether each factor will adversely affect it that the provision for liquidated damages was included in the contract. The court agrees with Virginia Power.

Stripped to its basics, GELP's argument is really a "catch-22:" "If actual damages can be quantified, there is no need to provide for liquidated damages, and such damages are unenforceable. If actual damages cannot be quantified, they are not actual damages at all. Thus, the liquidated damages provided for by contract are grossly in excess of actual damages and are unenforceable." That is not the law.

As stated earlier, the court is of the opinion that both contemplated damages *and* actual damages are relevant in determining whether a liquidated damages provision is enforceable. This does not mean, however, that damages must be quantifiable in order for them to be actual. Indeed, as Virginia Power argues, it is precisely because the parties knew that actual damages would probably *not* be quantifiable that liquidated damages were

agreed upon. Determinations by the SCC, financial markets, lending institutions, suppliers, and others are based on an infinite number of considerations, including, as shown by the evidence, power outages such as those which occurred at GELP. In fact, some of those determinations may not be made for years, perhaps after the statute of limitations has passed for GELP's alleged breaches of contract. Most likely, Virginia Power will never be able to prove that any particular dollar amount of any such determination is directly attributable to these outages. Still, as the evidence shows, they will be factors. Moreover, the court finds from the evidence that when the representatives of Virginia Power and the representatives of GELP sat down to negotiate their contract, which representatives on both sides were unquestionably highly-trained and sophisticated in these types of negotiations, they *knew* that such outages, if they occurred, would be factors in the kinds of determinations discussed above. They also knew that it would be impossible for Virginia Power to prove, as it has now been shown to be impossible for Virginia Power to prove, what its monetary losses are, or will be, as a result of the outages. Finally, they knew that in light of the kinds of determinations at stake and the vast sums of money involved, $600,000 a day in liquidated damages was not an unreasonable amount. It was for all of those reasons that the subject liquidated damages were provided for. They will be enforced.

In summary, the court finds from the evidence presented at trial that the parties knowingly and intelligently entered into a contract which provided for liquidated damages of $600,000 a day upon GELP's breach of contract; that Virginia Power has proven that it suffered actual damages as a result of the power outages at issue in this case, even though such damages cannot be presently quantified; that $600,000 a day as liquidated damages is not unreasonable or grossly in excess of actual damages; and that the liquidated damages provision of the parties' contract is enforceable. Of course, whether damages must be paid at all depends on whether GELP breached the contract. That issue is yet to be decided.