# CIRCUIT COURT OF THE CITY OF RICHMOND

Gordonsville Energy, L.P.

v.

Virginia Electric and Power Co.

December 5, 1997

Case No. LC-563-4

BY JUDGE RANDALL G. JOHNSON

In this sequel to an earlier case between the same parties, each party seeks summary judgment on certain issues. Defendant, Virginia Electric and Power Company ("Virginia Power"), also asks the court to "reaffirm" an earlier order sustaining its demurrer to Count IV of the motion for judgment and its demurrer and plea in bar to Count V. A hearing on all of the motions was held on October 21, 1997.

The court's May 29, 1996, letter opinion in the earlier case, Case No. LA-2266-4, contains a detailed statement of facts. *See* 39 Va. Cir. 292. Those facts will not be repeated here. Briefly, Gordonsville Energy, L.P., which the parties and court referred to in the earlier case as "GELP," but which now refers to itself as "Gordonsville," owns and operates two electric generating facilities in Louisa County, Virginia, near Gordonsville. In the earlier suit, the facilities were usually referred to as Facility 1 and Facility 2. In the present suit, they are called Unit 1 and Unit 2. They are the same facilities.

Gordonsville sells its electricity exclusively to Virginia Power, which in turn sells it to its industrial, business, and residential customers. Under the parties' contract, Gordonsville is required to provide electricity to Vir-

ginia Power, whenever Virginia Power demands it, through what is called a "dispatch;" that is, when Virginia Power "dispatches" Unit 1, Unit 1 must provide the specified amount of electricity until the dispatch is ended. Virginia Power pays Gordonsville for actual electrical output — called "Net Electrical Output" — and for Gordonsville's readiness to provide such output — called "Dependable Capacity" — in accordance with formulas set out in the contract.

Section 1.18 of the contract defines a "Forced Outage" as:

> An occurrence where: (i) any or all of the Facility's Dependable Capacity is not available for Dispatch; or (ii) the Facility's delivery of Net Electrical Output deviates from Virginia Power's Dispatch level by greater than ±5%.

Section 1.20 defines a "Forced Outage Day" as:

> A continuous twenty-four (24) hour period (a) beginning with the start of a Forced Outage, regardless of the number of actual outages that may occur during such twenty-four (24) hour period(s), and (b) designated by [Gordonsville] as a Forced Outage Day.

Under the contract, Gordonsville is allowed a certain number of Forced Outage Days each year without penalty. The precise number of Forced Outage Days for each year may vary and is determined by formulas and circumstances set out in the contract. Beyond that number, the contract provides:

> The Parties agree that Virginia Power will be substantially damaged in amounts that will be difficult or impossible to determine if . . . the Facility exceeds the allowance for Forced Outage Days under Section 10.15(g) . . . . Therefore, to the limited extent set forth in the Agreement, the Parties have agreed on sums which the Parties agree are reasonable as liquidated damages for such occurrences. It is further understood and agreed that the payment of the liquidated damages is in lieu of actual damages for such occurrences. [Gordonsville] hereby waives any defense as to the validity of any liquidated damages stated in this Agreement as they may appear on the grounds that such liquidated damages are void as penalties or are not reasonably related to actual damages.

Section 10.18.
Section 10.15(g) of the contract provides, in part:

> Payments [from Virginia Power to Gordonsville] for Dependable Capacity will be reduced by six hundred thousand dollars ($600,000) as liquidated damages for each . . . Forced Outage Day that was not a Force Majeure Day and was in excess of the allowances specified in this Section 10.15(g) . . . .[2]

The earlier case involved two occurrences — a lightning strike on June 30, 1994, and the "tripping" of a "negative phase sequence alarm" (similar to a circuit breaker) on February 13, 1995 — that caused the facilities to be out of service. Virginia Power, claiming that the outages constituted breaches of contract, assessed liquidated damages at the contract rate of $600,000 a day for twelve days, for a total of $7,200,000. Gordonsville filed suit claiming that (1) the liquidated damages provision of the contract was unenforceable as an unlawful penalty; and (2) each day of the outages was excused as a "force majeure" event as that term is used in the contract; that is, that the outages were caused by events beyond the control of Gordonsville and, thus, were not subject to the contract's provision for liquidated damages. In January of this year, after pretrial rulings removed Gordonsville's defense relating to the legality and enforcement of the contract's liquidated damages provision, the case went to trial. The jury agreed with Gordonsville that every day of the outages was caused by an event of force majeure, and final judgment was entered for Gordonsville.

The present suit involves another outage at Unit 1. According to the motion for judgment, on September 9, 1995, Gordonsville began to investigate an indication of an abnormal electrical condition it had experienced within the unit's steam turbine generator several times during the preceding days. The investigation preliminarily indicated an electrical short circuit within the generator. Gordonsville and personnel from General Electric Power Systems, which had provided major equipment and technical support to the company that built the facilities for Gordonsville, determined that the short circuit had been caused by damage to or breakdown of power generation materials and equipment and that Unit 1 would have to be taken out of service for a period of time to fully diagnose and correct the problem. On Monday, September 11, Gordonsville gave written notice to Vir-

---

[2] The definition of a "Force Majeure Day" will be discussed later.

ginia Power that Unit 1 was out of service and that such breakdown constituted an event of force majeure under the contract. The unit was not put back into service until September 20, 1995. As it had done as a result of the earlier outages, Virginia Power assessed liquidated damages of $600,000 a day for the period of the outage, a total of $6,600,000. As it had done when the earlier liquidated damages were assessed, Gordonsville filed suit to recover the liquidated damages paid.

The present motion for judgment is in five counts. Count I alleges that Virginia Power breached its contract with Gordonsville by assessing liquidated damages for an outage caused by an event of force majeure. Count II alleges that Virginia Power breached the contract by refusing to treat three days of the outage as "Supplemental Forced Outage Days" as that term is used in the contract. If those days had been treated as Supplemental Forced Outage Days, Virginia Power would not be entitled to liquidated damages for those days. In Count III, Gordonsville claims that because neither of its units was dispatched on September 10-12, Virginia Power breached the contract by assessing liquidated damages on those days. Count IV alleges that Virginia Power breached the contract by dispatching Unit 1 on September 13-20 after it knew that the unit had been taken out of service by Gordonsville. Count V alleges that the liquidated damages assessed against Gordonsville bear no relation to actual damages and, thus, are unenforceable as an unlawful penalty. Each of the counts, and the parties' motions relating to them, will be discussed in turn.

### Count I

Both parties seek summary judgment on Count I, which alleges that Virginia Power's assessment of liquidated damages is improper because the outage at issue was caused by an event of force majeure. In this regard, § 14.1 of the contract, titled "Force Majeure," provides:

> [N]either Party shall be responsible or liable for or deemed in breach hereof because of any delay or failure in the performance of their respective obligations hereunder to the extent that such delay or failure is due solely to circumstances beyond the reasonable control of the Party experiencing such delay or failure, including but not limited to acts of God; unusually severe weather conditions; strikes or other labor difficulties; war; riots; requirements, actions or failures to act on the part of governmental authorities preventing performance; inability despite due diligence to obtain,

maintain or renew required licenses; accident; fire; damage to or breakdown of power generation materials and equipment that is not caused by normal wear and tear; or transportation delays or accidents . . . .

It is Virginia Power's position that the outage at issue in this case does not fit within any of the categories set out in § 14.1 and, thus, Gordonsville's allegation in Count I that the outage was a force majeure event should be dismissed by summary judgment. Gordonsville argues that the outage as described in the motion for judgment so obviously qualifies for force majeure status that summary judgment in Gordonsville's favor is appropriate. The court rejects both arguments.

The motion for judgment specifically alleges that the September 1995 outage was due to "the damage to or breakdown of power generation materials and equipment *not due to normal wear and tear* . . . ." Emphasis added. Such allegation fits perfectly within § 14.1's language excusing delays and failures caused by "damage to or breakdown of power generation materials and equipment *that is not caused by normal wear and tear.*" While Virginia Power cites Gordonsville's answers to discovery and other statements by Gordonsville officials to argue that the equipment failure was not caused by anything *beyond Gordonsville's control,* the court does not know that to be true. Gordonsville contends that the failure was beyond its control. Virginia Power contends that it was not. This is precisely the type of genuine issue of material fact that precludes the grant of summary judgment. *See* Rule 3:18 of the Rules of the Supreme Court of Virginia. It precludes summary judgment for Virginia Power here.

The court also rejects Virginia Power's argument that a ruling in the prior case mandates summary judgment now. That ruling involved the issue of whether the negligent design and construction of the Gordonsville facilities by persons over whom Gordonsville claimed it had no control constituted a force majeure event under the contract. The court ruled that since Gordonsville selected the persons who designed and built the facilities and since Gordonsville's contract with Virginia Power required Gordonsville — not the designers and builders — to provide electricity to Virginia Power, design and construction flaws could not be excused as force majeure events. That ruling, however, did not foreclose Gordonsville's right to attempt to convince a jury that the outages involved in that case were force majeure events for reasons other than negligent design and construction. As noted earlier, that attempt was successful. Gordonsville is not foreclosed from making a similar attempt in the present case.

With regard to Gordonsville's motion for summary judgment, Gordonsville argues that the court should rule as a matter of law that (1) forced outages caused by power generation equipment breakdowns are events of force majeure; (2) Virginia Power must prove that Gordonsville or an agent of Gordonsville itself was negligent — not that an independent contractor was negligent — in order for Virginia Power to avoid the contract's force majeure provisions; and (3) the determination of whether any vendor who supplied power generation equipment to Gordonsville was an agent of Gordonsville or an independent contractor is a question of fact for a jury. As already stated, Gordonsville's motion for summary judgment is also denied.

As has just been discussed with regard to Virginia Power's motion for summary judgment as to Count I, the court simply is not able to rule as a matter of law that the September 1995 outage was not an event of force majeure. The court is also not able to rule that it was. Each party's position is vigorously contested by the other, and the facts in the record do absolutely nothing to convince the court that there are no material facts genuinely in dispute. Quite the contrary, the material facts are very much in dispute, just as they were in the first case. In addition, whether Virginia Power must prove that Gordonsville was negligent is also not known at this point. It will only be known after the precise cause of the outage, or at least each parties' contention of the precise cause, is presented at trial. As already pointed out, however, the court held in the earlier case that negligence of the facilities' designers and builders was not an event of force majeure. Gordonsville will not be allowed to argue that it is an event of force majeure in this case.

### Count II

Count II of the motion for judgment alleges that Virginia Power's treatment of September 18-20, the last three days of the outage, as excess Forced Outage Days constitutes a breach of contract. This is so, says Gordonsville, because even if those days are Forced Outage Days under the contract, Gordonsville is entitled to apply its allowance of Supplemental Forced Outage Days, provided under § 10.15(g) of the contract, so that no obligation to pay liquidated damages exists. Section 10.15(g) sets out certain Forced Outage Days that Gordonsville can claim without exposure to liquidated damages. With respect to this case, the pertinent part of that section provides:

> [D]uring the first two (2) years of operation . . . [Gordonsville] will be allowed an additional three (3) Forced Outage Days (such additional Forced Outage Days hereafter referred [to] as "Supplemental Forced Outage Days") . . . .

It is Virginia Power's position that Gordonsville had used all of its Supplemental Forced Outage Days before the September 1995 outage and is entitled to no more. Gordonsville contends that three of the days Virginia Power claims had already been used were actually three days of the 1994 outage involved in the earlier case. It is Gordonsville's argument that since the jury in the earlier case determined that all of the days of the earlier outage were caused by an event of force majeure, those days were still available as Supplemental Forced Outage Days in September 1995. The court agrees with Virginia Power.

The term "Force Majeure Day" is defined in § 1.19 of the contract. It states:

> 1.19 "Force Majeure Day" – *A Forced Outage Day* that is both (i) excused under the provisions of Article 14 and (ii) is designated as a Force Majeure Day by [Gordonsville].

Emphasis added.

In fact, in the letter opinion dated May 29, 1996, in the earlier case, the court specifically held:

> At the time of each of the outages at issue in this case, [Gordonsville] notified Virginia Power that it was claiming those days as Force Majeure Days. Since a Force Majeure Day is by definition also a Forced Outage Day, and since nowhere in the contract is there any particular method for Gordonsville's designating an outage as a Forced Outage Day, *the court holds that by claiming Force Majeure Days [Gordonsville] automatically designated those days as Forced Outage Days.* In addition, Virginia Power's failure to excuse those days as Force Majeure Days under Article 14 of the contract did not make such days non-Forced Outage Days. It only made them, at least in Virginia Power's mind, non-Force Majeure Days.

39 Va. Cir. at 303 (emphasis added).

The jury's verdict in the earlier case does not change that holding. The only thing the jury determined was whether the outages at issue in that case were caused by events of force majeure. The jury did not determine that the outages were not Forced Outage Days. As the May 29, 1996, holding makes clear, that determination is conclusively made by the contract. *All* Force Majeure Days are Forced Outage Days. Moreover, since the present case involves the same parties, the same contract, and the same facilities as the earlier one, the court's holding on this question in the earlier case is just as binding here. Virginia Power's motion for summary judgment on Count II is granted, and that count will be dismissed.

## Count III

Only Virginia Power moves for summary judgment on Count III. That motion will also be granted.

Count III alleges that since Unit 1 was not dispatched during the period September 10-12, 1995, those days were not automatically "deemed" Forced Outage Days under § 10.15(g) of the contract. Count III also alleges that Gordonsville never designated those days as Force Majeure Days. Thus, according to Gordonsville, those days cannot be held to be Forced Outage Days subject to liquidated damages. The fact is, however, that unless those days are Force Majeure Days, liquidated damages are due.

A unit does not have to be dispatched at the time of an outage in order for a Forced Outage to occur. Indeed, as already pointed out, the term "Forced Outage" is defined in § 1.18 of the contract as "an occurrence where: (i) any or all of the Facility's Dependable Capacity *is not available for Dispatch* . . . ." Emphasis added. That is precisely what happened on September 10-12. Moreover, there is no reasonable reading of the motion for judgment that allows any interpretation other than that Gordonsville designated the days in question as Force Majeure Days. For example, paragraph 25 states:

On Monday, September 11, 1995, Gordonsville telecopied written notice to Virginia Power that Unit 1 was out of service due to the damage to or breakdown of power generation materials and equipment not due to normal wear and tear, *and that such breakdown constituted an event of Force Majeure under the Contract.*

Emphasis added.

Paragraph 28 states:

> Gordonsville advised Virginia Power that the forced outage *and
> event of Force Majeure* were over at 8:21 a.m. on Wednesday,
> September 20, 1995, and promptly confirmed that notice in writ-
> ing.

Emphasis added.

And in paragraph 31, Gordonsville alleged:

> Virginia Power responded to the Outage notice at Gordonsville
> Unit 1 by engaging in a sustained and tenacious effort to force
> Gordonsville to pay liquidated damages under the contract. This
> effort included Virginia Power's use of unfair and unpermitted
> means to force Gordonsville to sustain Forced Outage Days, and
> improper and baseless rejection of *Gordonsville's explanation that
> the Outage had been caused by an event of Force Majeure.*

Emphasis added.

There are many other references in the motion for judgment to Gor-
donsville's designation of the outage as a force majeure event. They will
not be set out here. In light of those references, however, and in light of the
court's holding that a designation by Gordonsville of an outage as a Force
Majeure Day automatically constitutes a designation by Gordonsville of a
Forced Outage Day, summary judgment in favor of Virginia Power on
Count III is appropriate. It will be granted.

### Counts IV and V

Virginia Power's motions with respect to Counts IV and V of the mo-
tion for judgment are identical and will be considered together. Count IV
alleges that when Virginia Power dispatched Unit 1 on September 13-20,
knowing that the unit was already out of service, it breached the contract in
three ways. First, Gordonsville argues that the dispatches were based solely
on Virginia Power's desire to take liquidated damages from Gordonsville.
Second, Gordonsville claims that the dispatches were not in accordance
with "Prudent Utility Practices" as required by § 1.10 of the contract. And
third, Gordonsville claims that the dispatches violated Virginia Power's
covenant of good faith.

Count V alleges that Virginia Power is not entitled to liquidated dam-
ages at the contract rate of $600,000 per day because (1) Virginia Power

suffered no damage or injury as a result of the outage; and (2) the amount of liquidated damages so far exceeds any probable loss from an outage as to be unenforceable.

Virginia Power's "Motion for Order Affirming Dismissal of Counts IV and V" seeks to dismiss those counts on the basis of a previous order in this case. On June 20, 1997, the court entered an order that, among other things, sustained Virginia Power's demurrer to Counts IV and V of the motion for judgment and its plea in bar to Count V. That portion of the order was based for the most part on rulings made in the earlier lawsuit and provided:

> The demurrer to Counts IV and V (and the plea in bar to Count V) of the motion for judgment are sustained on the basis that these counts are barred by either res judicata or collateral estoppel. In the alternative, the Court grants summary judgment in Virginia Power's favor for reasons of judicial economy (based on the assumption that the evidence to be presented regarding those counts would not differ from the evidence presented in *Gordonsville Energy, L.P. v. Virginia Electric and Power Co.*, Case No. LA-2266-4) because (a) as to Count IV, an allegation that Virginia Power's dispatch was not permitted by — and therefore a breach of — the contract, cannot state a cause of action as a matter of law, and (b) as to Count V, the record establishes that the liquidated damages assessed by Virginia Power here do not constitute an unenforceable penalty, as set forth in this Court's letter opinion of November 7, 1996, in Case No. LA-2266-4 [40 Va. Cir. 448]. Plaintiff may make a written offer of proof regarding Counts IV and V to be made a part of the record . . . . The Court will adhere to its rulings on Counts IV and V unless the proffer causes the Court to conclude otherwise.

Gordonsville has now filed its offer of proof. It does not cause the court to conclude otherwise. Counts IV and V will be dismissed.